J-S70043-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 1422 EDA 2014 |

Appeal from the Judgment of Sentence Entered September 6, 2013,
in the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0001102-2013

BEFORE:  LAZARUS, MUNDY, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 16, 2014**

Michael Williams (Appellant) appeals from the judgment of sentence entered September 6, 2013, following his convictions for operating a methamphetamine laboratory; possession of red phosphorus, etc., with intent to manufacture a controlled substance; use of, or possession with intent to use, drug paraphernalia; and manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance.[1]  Upon review, we affirm Appellant's convictions, vacate Appellant's judgment of sentence, and remand for resentencing.

On January 17, 2013, the Easton Police Department charged Appellant with the above crimes.  A jury trial was held from July 8 through July 10,

---

[1]  35 P.S. §§ 780-113.4(a)(1), 780-113.1(a)(3), 780-113(a)(32), 780-113(a)(30), respectively.

* Retired Senior Judge assigned to the Superior Court.

2013. During the trial, the Commonwealth presented the testimony of Inspector Salvatore Crisafulli of the Easton Police Department and Rebecca Patrick, a lab technician from the State Police Clandestine Drug Laboratory Response Team. The Commonwealth also submitted numerous exhibits into evidence, including items found in the garbage at Appellant's residence, photographs of the garbage, lab reports, a DVD containing a recording of Appellant's police interview, a printout from Meth Check (an online database containing information tracking the purchase of ephedrine and pseudoephedrine), and letters written by Appellant to Inspector Crisafulli. Appellant did not testify at trial.

The trial court summarized the testimony and evidence at trial as follows:

> Inspector Crisafulli testified that on January 16, 2013, he participated in an investigation related to the manufacture of controlled substances from a residence identified as 1415 Pine Street in Easton, Pennsylvania. At approximately 4:00 a.m. that morning, he participated in a "trash pull," in which the police took two bags of trash from three curbside trashcans in front of 1415 Pine Street. The officers brought these bags of trash back to the station for examination. Inspector Crisafulli testified that they initially discovered long strips of paper and broken batteries. There was also a strong, intense chemical odor coming from the bags, along with a white gas.

> The officers contacted the Pennsylvania State Clandestine Response Team to aid in processing the items and to limit the hazardous exposure of the officers. The items recovered from the trash pull included (1) broken batteries, including lithium strips and battery hulls; (2) a brownish liquid in a Pepsi bottle marked as "waste[;"] (3) a melted bottle with a white solid gassing substance; (4) starting fluid; (5) an ammonia test kit and PH test kit; (6) empty blister packs of pseudoephedrine-

based medicine; (7) ice packs, which contain ammonia nitrate in small round balls; and (8) a broken meth pipe.

Inspector Crisafulli further testified that the Easton Police Department executed a search warrant on [Appellant's] second-floor bedroom in the early afternoon of January 16, 2013. The items seized, memorialized in an inventory receipt and made part of the record as Commonwealth Exhibit 39, included (1) packs of cold compresses, which were cut open; (2) a can of Prestone Starting Fluid, unopened; (3) a box of baking soda; (4) two containers of salt; (5) a small glass dish and aluminum foil; (6) an ammonia nitrate test kit; (7) isopropyl alcohol; (8) a full-mouth facemask respirator; and (9) a box containing meth pipes. Inspector Crisafulli further testified that some of the items recovered under the search warrant needed to be destroyed due to their hazardous nature.

Through Inspector Crisafulli, the Commonwealth introduced into evidence a DVD containing an audio and visual recording of a police interview with [Appellant] at the Easton Police Station after the police officers had executed a search warrant. Further, the Commonwealth introduced [Appellant's] history of purchasing ephedrine/pseudoephedrine products through a printout of a tracking database, Meth Check. Inspector Crisafulli testified that the Meth Check database established that [Appellant's] last purchase of pseudoephedrine occurred on January 6, 2013, after which [Appellant] was blocked from purchasing additional pseudoephedrine for thirty days. Inspector Crisafulli stated that an individual's purchase of pseudoephedrine is limited by law to 9 grams every thirty days. The Meth Check data base [sic] indicated that [Appellant] had also made two separate purchases of pseudoephedrine on December 26, 2012, one at Walmart and the other at Giant. Finally, the Commonwealth introduced four letters written by [Appellant] to Inspector Crisafulli, in which [Appellant] discussed his extensive knowledge of cooking meth, volunteered to aid the police in investigating local methamphetamine labs, and critiqued the evidence obtained by the police in the instant case.

[Ms. Patrick] testified as an expert witness at trial in the field of drug analysis and the hazmat clean-up of meth labs. In her testimony, the Commonwealth introduced into evidence two laboratory reports. In her first lab report, Ms. Patrick focused on evidence obtained through the "trash pull" and gave an overview

of the one-pot method of meth cooking that is commonly used in Pennsylvania. Ms. Patrick concluded that the clandestine manufacturing of methamphetamine was attempted, but unsuccessful, citing the ignited plastic bottle, which she referred to as the "cooking vessel," as evidence that something went wrong in the manufacturing process. Ms. Patrick testified that no methamphetamine was found because it appeared that the cooking process had failed.

Ms. Patrick also testified about the two blister packs of cold medicine. Ms. Pa[t]rick testified that each blister pack holds 3.6 grams of pseudoephedrine and can be used to generate a one[-] to[-]one ratio of methamphetamine – 3.6 grams of pseudoephedrine can produce 3.6 grams of methamphetamine.

The second lab report focused on the items seized from [Appellant's] bedroom when the police officers executed the search warrant. Ms. Patrick went through the inventory list and explained how some of the items seized could be used to manufacture methamphetamine. Ms. Patrick concluded that many of the items found were consistent with the one-pot method commonly used in Pennsylvania.

During her testimony, Ms. Patrick was presented with a Pepsi bottle, which was filled with what appeared to be a brownish liquid. The bottle was marked "waste," apparently labeled prior to its seizure by law enforcement. Ms. Patrick testified that she removed and weighed just the liquid. Then she tested the liquid for the presence of methamphetamine and identified the presence of methamphetamine crystals in the liquid.

On direct and cross-examination, Ms. Patrick acknowledged that the liquid solution was not entirely methamphetamine. It also contained the by-products from the manufacture of methamphetamine. Ms. Patrick testified that one knowledgeable about the manufacturing process can store the waste from the manufacturing process to later distill the solution to retrieve the methamphetamine that is dissolved within. Further, Ms. Patrick acknowledged that it is possible that the solution may also have contained urine, as knowledgeable users can recycle urine to reclaim any methamphetamine that was not processed by the body. However, Ms. Patrick did not test the solution for the presence of urine. Further, Ms. Patrick

did not reduce the liquid solution to measure the weight of only the methamphetamine. The lab report indicated that the entire solution weighed 1,340 grams.

The Commonwealth also played the video statement of [Appellant] for the jury. During his statement, [Appellant] bragged about his knowledge of the local methamphetamine market and his experience and talent related to cooking meth. [Appellant] (and here [the trial court] paraphrase[d]) basically argued to the police that the meth lab located in the trash bags was not his work, because the lab was amateurish and beneath his abilities.

Trial Court Order, 4/15/2014, 2-5 (citations and footnote omitted).

On July 10, 2013, the jury found Appellant guilty of all charges. In so doing, the jury also concluded that Appellant had manufactured between 5 and 10 grams of methamphetamine.

On September 6, 2013, the trial court sentenced Appellant to an aggregate 6 ¼ years to 21 years' incarceration. For the charge of operating a methamphetamine laboratory, Appellant received a sentence of 35 months to 120 months of incarceration. For the charge of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, Appellant received a sentence of 36 months to 120 months of incarceration. For the charge of use of, or possession with intent to use, drug paraphernalia, Appellant received a sentence of 4 months to 12 months of incarceration. For the charge of possession of red phosphorus, etc., with intent to manufacture a controlled substance, Appellant was sentenced to 24 months to 48 months of incarceration. All of the sentences ran consecutive to each other, with the exception of Appellant's sentence for possession of

red phosphorus, etc., with intent to manufacture a controlled substance, which was to run concurrent with the other sentences.

On September 6, 2013, Appellant filed post-sentence motions *pro se*. On September 9, 2013, defense counsel was discharged, as Appellant raised complaints of ineffectiveness of counsel, and conflict counsel was appointed to represent Appellant regarding post-sentence matters.

On September 16, 2013, Appellant filed a *pro se* notice of appeal to this Court. Consequently, the trial court found that Appellant's notice divested the trial court of jurisdiction and entered an order denying said motions pursuant to Pa.R.A.P. 1701(a) on September 24, 2013. On or about December 6, 2013, this Court remanded the matter for purposes of filing counseled post-sentence motions *nunc pro tunc*. On March 13, 2014, Appellant filed his post-sentence motions, which the trial court denied on April 15, 2014. Appellant then timely appealed to this Court.

On appeal, Appellant presents the following issues for our consideration:

> 1. Whether the evidence was insufficient to sustain the verdict and the verdict was against the weight of the evidence?
>
> 2. (a) Whether the trial court's consecutive sentencing for one event in one criminal departure in a [(]although violating several criminal statutes[)] [*sic*] 6 ¼ years – 21 years is excessive and does not reflect the conduct of … Appellant?
>
> (b) Whether the trial court failed to comply with the requirements of … 18 Pa.C.S.[] §[]7508([b]) which

requires that all of the provisions of the aforesaid statute should not be an element of the crime. Therefore, the sentence is unlawful [pursuant] to [***Commonwealth v. Watley***, 81 A.3d 108 (Pa. Super. 2013)]?

3. Whether the court's instruction and jury verdict slip with regard to weight of methamphetamine is erroneous?

Appellant's Brief at 3.

In his first issue, Appellant purports to challenge both the weight and sufficiency of the evidence supporting his convictions. Nevertheless, his actual argument appears to be limited to a sufficiency challenge. Accordingly, we conclude that Appellant has waived his weight claim for his failure to develop it,[2] and we apply the following standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The

---

[2] This Court has held that an appellant cannot present bald assertions in support of relief.

It is not for this Court to develop an appellant's arguments. Rather, it is the appellant's obligation to present developed arguments and, in so doing, apply the relevant law to the facts of the case, persuade us there were errors, and convince us relief is due because of those errors. If an appellant fails to do so, we may find the argument waived.

***Commonwealth v. Rush***, 959 A.2d 945, 950-51 (Pa. Super. 2008).

> Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Brown**, 23 A.3d 544, 559–60 (Pa. Super. 2011) (*en banc*) (quoting **Commonwealth v. Hutchinson**, 947 A.2d 800, 805-06 (Pa. Super. 2008)).

Appellant purports to challenge the sufficiency of the evidence supporting all four of his convictions; however, in support of his claim, Appellant presents a general contention that the Commonwealth failed to prove beyond a reasonable doubt that Appellant possessed the ingredients that are required to manufacture methamphetamine. To the extent that Appellant argues that the Commonwealth is required to prove beyond a reasonable doubt that Appellant possessed **every** ingredient necessary to manufacture methamphetamine, we reject such an argument. We are unaware of, and Appellant fails to cite, any legal authority imposing such a requirement. Only two of Appellant's convictions implicate the specific ingredients needed to manufacture methamphetamine, and they are written in the disjunctive. Specifically, under The Controlled Substance, Drug, Device and Cosmetic Act,

> A person commits the offense of operating a methamphetamine laboratory if the person knowingly causes a chemical reaction involving ephedrine, pseudoephedrine **or** phenylpropanolamine,

**or** any other precursor or reagent substance under section 13.1, [35 P.S. § 780-113.1,] for the purpose of manufacturing methamphetamine or preparing a precursor or reagent substance for the manufacture of methamphetamine.

35 P.S. § 780-113.4(a)(1) (footnote omitted) (emphasis added).

Moreover, 35 P.S. § 780-113.1(a)(3) prohibits the act of

[p]ossessing red phosphorous, hypophosphoric acid, ammonium sulfate, phosphorous, iodine, hydriodic acid, ephedrine, pseudoephedrine, lithium, sodium, potassium, sassafras oil, safrole oil **or** other oil containing safrole **or** equivalent, whether in powder or liquid form, phenylpropanolamine, phenyl acetone, methylamine, ammonium sulfate, ammonium nitrate **or** phenyl acetic acid with intent to manufacture a controlled substance.

*Id.* (emphasis added).[3] Thus, Appellant's argument is without merit.

Moreover, to the extent that Appellant argues that the Commonwealth failed to prove beyond a reasonable doubt that Appellant possessed **any** of the ingredients needed to manufacture methamphetamine, this argument

---

[3] Appellant was also convicted of violating 35 P.S. § 780-113(a)(30), which prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." *Id.* Finally, Appellant was convicted of violating 35 P.S. § 780-113(a)(32), which prohibits

[t]he use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

*Id.*

also fails. The items seized from the trash pull and Appellant's bedroom included, *inter alia*, broken batteries, including lithium strips and battery hulls; starting fluid; two empty blister packs of pseudoephedrine-based medicine; ice packs containing ammonium nitrate pellets; baking soda; and salt containers. N.T., 7/9/2013, at 18-26, 35-43. Further, the information from the Meth Check database demonstrated Appellant's history of repeated purchases of pseudoephedrine or pseudoephedrine-based medicine between July 2012 and January 2013. *Id.* at 58-61. Additionally, Inspector Crisafulli and Ms. Patrick testified as to how several of the seized items, particularly the starting fluid, lithium strips, ice packs containing ammonium nitrate, baking soda, pseudoephedrine, and salt, are used in the manufacture of methamphetamine. *Id.* at 18-21, 23-26, 140-46. From this direct and circumstantial evidence, the jury could reasonably conclude that Appellant possessed the ingredients necessary to manufacture methamphetamine, particularly the pseudoephedrine listed in 35 P.S. §§ 780-113.1(a)(3) and 780-113.4(a)(1).

Appellant also argues that there is insufficient evidence to prove that the amount of methamphetamine Appellant manufactured was between 5 and 10 grams. We disagree. The police recovered two blister packs of pseudoephedrine-based medicine from the trash pull. N.T., 7/9/2013, at 23. According to Ms. Patrick, each blister pack holds 3.6 grams of pseudoephedrine, which can be used to generate a one-to-one ratio of

methamphetamine. *Id.* at 137. Using simple math, the jury could reasonably conclude that using the two blister packs of pseudoephedrine, Appellant manufactured 7.2 grams of methamphetamine, which is within the 5-to-10-gram range found by the jury. Thus, Appellant's sufficiency-of-the-evidence claim is without merit.

Appellant next challenges both the discretionary aspects of his sentence and the legality of his sentence. With regard to his discretionary aspects of sentence claim, Appellant has failed to include in his brief a statement pursuant to Pa.R.A.P. 2119(f), and the Commonwealth has objected to this omission. Commonwealth's Brief at 15. Appellant, therefore, has waived this issue. *See Commonwealth v. Roser*, 914 A.2d 447, 457 (Pa. Super. 2006) ("A failure to include the Rule 2119(f) statement does not automatically waive an appellant's [discretionary aspects of sentencing] argument; however, we are precluded from reaching the merits of the claim when the Commonwealth lodges an objection to the omission of the statement.") (quoting *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006)).[4]

---

[4] In the context of his discretionary aspects of sentencing claim, Appellant argues that his aggregate sentence is in contravention of 42 Pa.C.S. § 9756(b)(1). Because this argument actually goes to the legality of his sentence, we address it here. *See Commonwealth v. Hurst*, 532 A.2d 865, 869 n.2 (Pa. Super. 1987) (providing that "illegality of sentence is not waivable and may be raised by this Court *sua sponte*").

Under 42 Pa. C.S. § 9756(b)(1), "[t]he court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum

As to Appellant's challenge to the legality of his sentence, he appears to argue that the trial court unlawfully imposed a mandatory minimum sentence pursuant to 18 Pa.C.S. § 7508, which provides, in relevant part:

> (4) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is methamphetamine or phencyclidine or is a salt, isomer or salt of an isomer of methamphetamine or phencyclidine or is a mixture containing methamphetamine or phencyclidine, containing a salt of methamphetamine or phencyclidine, containing an isomer of methamphetamine or phencyclidine, containing a salt of an isomer of methamphetamine or phencyclidine shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:
>
> > (i) when the aggregate weight of the compound or mixture containing the substance involved is at least five grams and less than ten grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: five years in prison and $30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity[.]
>
> ***
>
> **(b) Proof of sentencing.--**Provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the

---

sentence imposed." Appellant was sentenced to an aggregate 6 ¼ to 21 years of incarceration. As 6 ¼ years is less than one-half of 21 years (or 10 ½ years), Appellant's aggregate sentence does not violate 42 Pa.C.S. § 9756(b)(1). Thus, Appellant's claim in this regard is without merit.

defendant an opportunity to present necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

18 Pa. C.S. § 7508(a)(4)(i), (b).

In support of his argument, Appellant cites **Commonwealth v. Watley**, 81 A.3d 108 (Pa. Super. 2013) (*en banc*), wherein this Court noted the effect of **Alleyne v. United States**, 133 S.Ct. 2151 (2013), on mandatory minimum sentencing statutes in Pennsylvania:

> According to the **Alleyne** Court, a fact that increases the sentencing floor is an element of the crime. Thus, it ruled that facts that mandatorily increase the range of penalties for a defendant must be submitted to a fact-finder and proven beyond a reasonable doubt. The **Alleyne** decision, therefore, renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard.

**Watley**, 81 A.3d at 117 (footnote omitted).[5]

Notably, notwithstanding its observations regarding the constitutionality of Pennsylvania's mandatory minimum sentencing statutes outlined above, the **Watley** Court upheld the mandatory minimum sentence in that case, which the trial court imposed pursuant to 42 Pa.C.S. § 9712.1. **Watley**, 81 A.3d at 121. The Court did so on the ground that "the factual predicates for determining the mandatory minimum [had been] proven to a jury beyond a reasonable doubt." **Id.**

---

[5] Among those mandatory minimum sentencing statutes listed in **Watley** is 18 Pa.C.S. § 7508(b). **See id.** at 117 n.4.

- 13 -

Here, the factual predicate for imposing the mandatory minimum pursuant to 18 Pa.C.S. 7508(a)(4)(i) was likewise determined by a jury under the beyond-a-reasonable-doubt standard.[6] Nevertheless, we hold that Appellant's sentence is illegal. In so doing, we find this Court's recent decisions in **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*) and **Commonwealth v. Valentine**, __ A.3d __, 2014 WL 4942256 (Pa. Super. filed October 3, 2014) instructive.

In **Valentine**, this Court aptly discussed the **Newman** decision as follows:

> In **Newman***,* we reviewed the constitutionality of 42 Pa.C.S.A. § 9712.1, which enhances the minimum sentence where a firearm is found on a drug dealer, an accomplice, or in the vicinity of the contraband. …
>
> [***]
>
> We explained in **Newman** that under **Alleyne***,* the factual predicates for imposition of the § 9712.1 mandatory minimum sentence (i.e., that the firearm was found on a drug dealer, an accomplice or in the vicinity of the contraband) "must be pleaded in the indictment, and must be found by the jury beyond a reasonable doubt before the defendant may be subjected to an

---

[6] Specifically, the trial court instructed the jury that if it found Appellant guilty of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, it also must make a determination as to the weight of the methamphetamine that Appellant manufactured for sentencing purposes. N.T., 7/10/2013, at 46-47. The trial court also instructed the jury that it "must agree unanimously that each and every element for each charge has been proven with proof beyond a reasonable doubt before [it could] find the defendant guilty," and provided the jury with a definition of that standard. **Id.** at 25-26, 53-54. Moreover, the verdict slip included an interrogatory as to the weight of methamphetamine Appellant manufactured, which the jury answered by marking "5 -<10 grams." **See** Verdict Slip, 7/10/2013, at 1.

increase in the minimum sentence." Concluding that the factual predicates for imposition of the mandatory minimum sentence had not been presented to a jury, we vacated the judgment of sentence.

Notably in **Newman***,* we declined the Commonwealth's proposed remedy that we remand for a sentencing jury to determine beyond a reasonable doubt whether the Commonwealth had proven the factual predicates for § 9712.1. We explained:

> [T]he Commonwealth's assertion assumes that Subsection (a) of Section 9712.1, which sets the predicate for the mandatory minimum sentence, survives constitutional muster, and that only Subsection (c), which directs that the trial court shall determine the predicate of Subsection (a) by a preponderance of the evidence, fails. In other words, the Commonwealth is contending that we may sever and retain those parts of Section 9712.1 that are not constitutionally infirm.... We respectfully disagree.
>
> [***]
>
> We find that Subsections (a) and (c) of Section 9712.1 are essentially and inseparably connected. Following **Alleyne***,* Subsection (a) must be regarded as the elements of the aggravated crime of possessing a firearm while trafficking drugs. If Subsection (a) is the predicate arm of Section 9712.1, then Subsection (c) is the "enforcement" arm. Without Subsection (c), there is no mechanism in place to determine whether the predicate of Subsection (a) has been met.
>
> { "pageset": "S29 The Commonwealth's suggestion that we remand for a sentencing jury would require this court to manufacture whole cloth a replacement enforcement mechanism for Section 9712.1; in other words, the Commonwealth is asking us to legislate. We recognize that in the prosecution of capital cases in Pennsylvania, there is a similar, bifurcated process where the jury first determines guilt in the trial proceeding (the guilt phase) and then weighs aggravating and mitigating factors in the sentencing proceeding (the penalty phase). However, this mechanism was created by the General Assembly and is

enshrined in our statutes at 42 Pa.C.S.A. § 9711. We find that it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following **Alleyne**. We cannot do so.

**Valentine,** 2014 WL 4942256, at *6-*8 (citations omitted) (quoting **Newman**, 99 A.3d at 98, 101-02). Thus, in **Newman**, this Court vacated and remanded for resentencing without consideration of the mandatory minimum sentences provided in Section 9712.1. **Newman**, 99 A.3d at 103.

In **Valentine**, this Court addressed whether the trial court's imposition of mandatory minimum sentences pursuant to 42 Pa.C.S. § 9712 and 42 Pa.C.S. § 9713 was unlawful. Importantly,

the trial court permitted the jury, on the verdict slip, to determine beyond a reasonable doubt whether Appellant possessed a firearm that placed the victim in fear of immediate serious bodily injury in the course of committing a theft for purposes of the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9712(a), and whether the crime occurred in whole or in part at or near public transportation, for purposes of the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9713(a). The jury responded "yes" to both questions.

**Valentine**, 2014 WL 4942256, at *8. Nevertheless, we observed in **Valentine** that

[i]n presenting those questions to the jury, however, we conclude, in accordance with **Newman**, that the trial court performed an impermissible legislative function by creating a new procedure in an effort to impose the mandatory minimum sentences in compliance with **Alleyne**.

The trial court erroneously presupposed that only Subsections (c) of both 9712 and 9713 (which permit a trial judge to enhance the sentence based on a preponderance of the evidence standard) were unconstitutional under **Alleyne**, and that

- 16 -

Subsections (a) of 9712 and 9713 survived constitutional muster. By asking the jury to determine whether the factual prerequisites set forth in § 9712(a) and § 9713(a) had been met, the trial court effectively determined that the unconstitutional provisions of § 9712(c) and § 9713(c) were severable. Our decision in *Newman* however holds that the unconstitutional provisions of § 9712(c) and § 9713(c) are not severable but "essentially and inseparably connected" and that the statutes are therefore unconstitutional as a whole.

Moreover, *Newman* makes clear that "it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following *Alleyne*." Therefore, the trial court lacked the authority to allow the jury to determine the factual predicates of §§ 9712 and 9713.

*Id.* (citations omitted) (quoting *Newman*, 99 A.3d at 101-02). Therefore, although we recognized that "this Court has upheld sentences imposed under various mandatory minimum sentencing provisions rendered unconstitutional by the *Alleyne* decision," such as in *Watley*, we vacated and remanded for resentencing without consideration of the mandatory minimum sentences in sections 9712 and 9713. *Id.* at 9 & n.4.

Based on the foregoing, we likewise hold that, here, the trial court impermissibly attempted to "cure" the constitutional defects of section 7508 by submitting the question of weight of methamphetamine to the jury to be determined using the beyond-a-reasonable-doubt standard.[7]  As such, we

_____

[7] In Appellant's final issue, he argues that the trial court's instruction and the jury verdict slip are erroneous "with regard to [the] weight of methamphetamine."  Appellant's Brief at 15.  For the reasons already stated herein, we agree that the jury instructions and verdict slip, as they pertain to the jury's determination of weight of methamphetamine manufactured beyond a reasonable doubt, are improper.

- 17 -

vacate Appellant's sentence and remand for resentencing without consideration of the mandatory minimum sentences provided in section 7508.

Convictions affirmed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2014