J-S37006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JUAN RAMON TIBURCIO | |
| Appellant | No. 1589 MDA 2016 |

Appeal from the Judgment of Sentence Entered August 9, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0004618-2015

BEFORE:  STABILE, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                     **FILED AUGUST 22, 2017**

Appellant Juan Ramon Tiburcio appeals from the August 9, 2016 judgment of sentence entered in the Court of Common Pleas of Berks County ("trial court"), following his jury convictions for two counts of delivery of a controlled substance (heroin), possession with intent to deliver a controlled substance (heroin) ("PWID"), conspiracy to commit PWID, three counts of criminal use of a communication facility, three counts of possession of drug paraphernalia, and three counts of possession of a controlled substance (heroin).[1]  Upon review, we affirm.

---

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. §§ 903(a) and 7512(a); 35 P.S. § 780-113(a)(32) and (16), respectively.

The facts and procedural history of this case are undisputed.[2]  Briefly, between June 29, 2015 and August 11, 2015, the Narcotics Enforcement Team of the Berks County District Attorney's Office ("Narcotics Team") was working undercover to purchase heroin from a suspect, Karla Romig.  On August 11, 2016, Romig was arrested for drug offenses.  She then consented to Sergeant Todd Harris' use of her phone to contact her supplier, later identified as Appellant.  Posing as Romig, Sergeant Harris texted Appellant.  During the text conversation, Sergeant Harris asked Appellant for "three whole ones" which meant he was asking for three bundles of heroin.  Through the text conversation between Sergeant Harris (posing as Romig) and Appellant, they arranged to have Appellant deliver the drugs to Romig's residence.  Once Appellant arrived at the residence, he sent a text message to Romig stating that he was outside.

At that same time, the surveillance units working with Sergeant Harris informed him that a Toyota Camry had pulled up at the residence.  Appellant exited the passenger side of the Camry, operated by his brother Michael Tiburcio ("co-defendant"), and started to walk up onto the porch of Romig's residence.  He was then taken into custody.  The Narcotics Team recovered from Appellant's person $818.00 in U.S. currency, two cellular telephones,

---

[2] Unless otherwise noted, these facts are taken from the Trial Court Pa.R.A.P.1925(a) Opinion, 12/8/16, at 16–18.

and a sandwich bag containing a bundle of 10 heroin packets and another bundle of 9 heroin packets.

The Narcotics Team instructed the co-defendant to exit the Camry. A subsequent search of the co-defendant led to the recovery of a plastic sandwich bag containing 41 packets of crack cocaine, $296.00 in U.S. currency, a chunk of bulk cocaine and one packet of powder cocaine. Following the administration of Miranda warnings, the co-defendant directed the Narcotics Team to a small change drawer to the left of the steering wheel in the Camry containing 15 additional packets of heroin. The Narcotics Team also recovered the co-defendant's cellular phone from inside of the Camry. The co-defendant admitted to Detective George Taveras of the Berks County District Attorney's Office that he was "willing to cooperate with law enforcement," "he was doing this to get by," "times were tough," and that "this was a very small amount" and he can do "bigger things."

The Narcotics Team eventually charged Appellant with the above-mentioned crimes. Appellant's case proceeded to a jury trial, following which he was convicted of two counts of delivery of a heroin, PWID, conspiracy to commit PWID, three counts of criminal use of a communication facility, three counts of possession of drug paraphernalia, and three counts of possession of heroin. On August 9, 2016, the trial court sentenced Appellant to an aggregate term of 11 to 60 years' imprisonment. On August 19, 2016, Appellant filed post-sentence motions. On September 1, 2016, the trial court denied Appellant's motion. Appellant timely appealed to this

Court. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant raises three issues for our review:

[I.] Did the trial [court] err in allowing the Commonwealth to present an expert witness who was part of the arrest team, when the Commonwealth never disclosed the expert to the defense before trial and the facts of the case did not warrant the need for expert testimony?

[II.] Did the Commonwealth fail to present evidence to support a conviction of conspiracy?

[III.] Is the sentence of each count in athe [sic] aggravated range and to the maximum possible term and run consecutively, illegal?

Appellant's Brief at 5 (unnecessary capitalizations omitted).[3]

After careful review of the record and the relevant case law, we conclude that the trial court accurately and thoroughly addressed Appellant's first two issues on appeal. *See* Trial Court Opinion, 12/8/16, at 9-19. Accordingly, we affirm the trial court's August 9, 2016 judgment of

---

[3] Appellant's third issue implicates only the discretionary aspects of sentencing. As the Commonwealth points out, Appellant has failed to include a Pa.R.A.P. 2119(f) statement in his brief in support of his discretionary aspects of sentencing challenge. It is settled that "[a] failure to include the Rule 2119(f) statement does not automatically waive an appellant's argument," unless the appellee, *i.e.*, the Commonwealth, objects to such omission. **Commonwealth v. Roser**, 914 A.2d 447, 457 (Pa. Super. 2006), **appeal denied**, 927 A.2d 624 (Pa. 2007). Instantly, the Commonwealth has objected to the absence of the Rule 2119(f) statement in Appellant's brief. **See** Commonwealth's Brief at 18-19. Accordingly, we deem Appellant's sentencing issue waived.

sentence. We further direct that a copy of the trial court's December 8, 2016 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/22/2017

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS
   :   OF BERKS COUNTY, PENNSYLVANIA
   :   CRIMINAL DIVISION
            VS.   :
   :   No. CP-06-CR-0004618-2015
   :
JUAN RAMON TIBURCIO   :   Assigned to: Judge M. Theresa Johnson

Kevin Feeney, Esquire
   *Attorney for Appellant*

Alisa R. Hobart, Esquire
   *Attorney for the Commonwealth/Appellee*

Memorandum Opinion      December 8, 2016      M. Theresa Johnson, J.

## PROCEDURAL HISTORY

The defendant in the above-captioned case, Juan Ramon Tiburcio (hereinafter referred to as the "Appellant"), was charged with the following offenses arising from an incident alleged to have occurred between June 29, 2015, and August 11, 2015: two counts of Delivery of a Controlled Substance,[1] Possession with Intent to Deliver a Controlled Substance,[2] three counts of Conspiracy to Commit Delivery of a Controlled Substance,[3] three counts of Criminal Use of Communication Facility,[4] three counts of Possession of Drug Paraphernalia,[5] and three counts of Possession of a Controlled Substance.[6] At trial, this Court granted Appellant's Motion for Judgment of Acquittal on Count 4 and Count 5, each charging the Appellant with Conspiracy to Commit Delivery of a Controlled Substance. *Notes of Testimony, Jury Trial, August 1, 2016 to August 2, 2016 (hereafter referred to as "NT") at 358-359.* Additionally, the third count of Conspiracy to Commit Delivery of a Controlled Substance, Count 6, was amended to read

---

[1] 35 P.S. §780-113(a)(30).
[2] 35 P.S. §780-113(a)(30).
[3] 18 Pa.C.S.A. §903(a)(1) to commit 35 P.S. §780-113(a)(30).
[4] 18 Pa.C.S.A. §7512(a).
[5] 35 P.S. §780-113(a)(32).
[6] 35 P.S. §780-113(a)(16).

1

Conspiracy to Commit Possession with the Intent to Deliver a Controlled Substance. *NT at 373.* On August 2, 2016, a jury found the Appellant guilty on all remaining counts. On August 9, 2016, the Appellant was sentenced to serve an aggregate term of eleven (11) years to sixty (60) years in a State Correctional Facility. Appellant was given credit of three hundred sixty four (364) days for time served. On August 19, 2016, Appellant filed a Consolidated Motion for a New Trial and to Modify Sentence. On August 31, 2016, this Court denied Appellant's Consolidated Motion for a New Trial and to Modify Sentence.

On September 26, 2016, Appellant applied for leave to appeal *in forma pauperis* and filed a Notice of Appeal to the Superior Court of Pennsylvania from Judgment of Sentence entered on August 9, 2016, and the denial of Appellant's Consolidated Motion for a New Trial and to Modify Sentence. On September 27, 2016, Appellant was ordered to file a Concise Statement of Matters Complained of on Appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On October 17, 2016, Appellant filed a Concise Statement of Errors Complained of on Appeal raising the following issues: 1) this Court erred in denying Appellant's post-sentence motions; 2) this Court erred by failing to instruct the jury on entrapment; 3) this Court erred in allowing Detective Leporace to testify as an expert witness; 4) whether the evidence was sufficient to support the jury's verdict on the charge of Conspiracy to Commit Delivery of a Controlled Substance with Michael Tiburcio; 5) whether the evidence elicited from Karla Romig was sufficient to support Appellant's convictions; 6) this Court erred in sentencing the Appellant to an aggravated range sentence; 7) this Court erred in sentencing Appellant to consecutive sentences resulting in a sentence that is unduly harsh and manifestly excessive; 8) this Court's sentence imposed on the Appellant is unjust and manifestly excessive; and 9) this Court erred in

2

denying Appellant's Motion to Modify Sentence. For purposes of this opinion, this Court has consolidated Appellant's issue one with issue nine and issue six with issues seven and eight.

## DISCUSSION

### Denial of Appellant's Post-Sentence Motions

In issues one and nine of Appellant's Concise Statement of Matters Complained of on Appeal, Appellant makes a general averment that this Court erred in denying Appellant's post-sentence motions. On August 19, 2016, Appellant filed a Consolidated Motion for a New Trial and to Modify Sentence (hereinafter referred to as "Motion"). Within Appellant's Motion, Appellant raised the following issues: 1) this Court erred in not giving the entrapment defense instruction to the jury; 2) this Court erred in allowing Detective Leporace to testify as an expert when the trial evidence did not require expert testimony; 3) there is no evidence to support a conspiracy charge between the Appellant and Michael Tiburcio; 4) the testimony of Karla Romig was insufficient to support the charges; 5) this Court erred in making each sentence for a drug conviction consecutive; and 6) this Court erred in sentencing the Appellant in the aggravated range without justification. As all of these issues have been subsequently raised on appeal and have been addressed below, this Court incorporates its reasons herein as the basis for the denial of Appellant's post-sentence motions.

### Entrapment Instruction

"The entrapment defense is aimed at condemning certain impermissible police conduct which falls below standards for the proper use of government power." Commonwealth v. Morrow, 650 A.2d 907, 913 (Pa. Super. 1994) (citation, quotation marks and ellipsis omitted). The Crimes Code defines the defense of entrapment in relevant part as follows:

3

## § 313. Entrapment

**(a) General Rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

**(b) Burden of Proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment. 18 Pa.C.S.A. §313(a)-(b).

"The entrapment statute places the burden of proof on the defendant and applies an objective test with regard to police conduct." Commonwealth v. Mance, 619 A.2d 1378, 1380 (Pa. Super. 1993) (citation and quotation marks omitted). "A defendant is entitled to an instruction on any recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor." Commonwealth v. Weiskerger, 554 A.2d 10, 14 (Pa. 1989). "Moreover, the entrapment statute conditions the availability of the defense *only* on a defendant's ability to establish its elements." Id. (citation omitted).

"Once a defendant has properly established the defense of entrapment, the trial court should determine the question as a matter of law wherever there is no dispute as to the operative facts relating to the defense." Commonwealth v. Lebo, 795 A.2d 987, 993 (Pa. Super. 2002) (citation and quotation marks omitted). "Whether an entrapment has occurred is normally a question for the jury unless the evidence points to only one possible conclusion; in that case, it may be decided as a matter of law." Id. (citation omitted). "When the defense of entrapment has been raised, the trial court should determine the question as a matter of law only when there is no dispute as to the operative facts relating to the defense." Commonwealth v. Medley, 725 A.2d 1225, 1227 (Pa. Super. 1999) (citation omitted). Operative facts are defined as "those that are necessary for appellant to prove by a preponderance of the evidence that he was entrapped." Commonwealth v. Lucci, 662 A.2d 1, 4 (Pa. Super. 1995). "Under the objective test for entrapment, these would be facts that go to the course of conduct of a government officer or agent that would fall below standards to which common feelings respond, for the proper use of government power." Id. (citation and quotation marks omitted).

"Where the police conduct regarding obtaining evidence of a crime rises to the level of outrageousness, the conduct will support a finding of entrapment as a matter of law." Commonwealth v. Zingarelli, 839 A.2d 1064, 1073 (Pa. Super. 2003) (citation omitted). "The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime." Id. (citation omitted). "Where police do no more than afford appellant an opportunity to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense." Commonwealth v. Marion, 981 A.2d 230, 239 (Pa. Super. 2009) (citations

5

and quotation marks omitted). "The availability of the entrapment defense under the statute does not preclude the police from acting so as to detect those engaging in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation." Id. (citation and quotation marks omitted).

Between the dates of June 29, 2015, and August 11, 2015, Sergeant Todd Harris of the Berks County District Attorney's Office (hereinafter referred to as "Sergeant Harris") conducted a drug investigation and directed Detective Camilla Karns, working in an undercover capacity, to purchase heroin from Karla Romig (hereinafter referred to as "Ms. Romig") on June 29, 2015, and July 20, 2015. *Notes of Testimony, Jury Trial, August 1, 2016 to August 2, 2016 (hereinafter referred to as "NT"), at 204-205.* On August 11, 2016, Ms. Romig was arrested and gave permission to Sergeant Harris to use her phone to contact her supplier. *NT at 205-207.* Pursuant to this agreement, Sergeant Harris communicated with Ms. Romig's supplier, an individual known to Ms. Romig as "Blue" (subsequently determined to be the Appellant), via text message and posing as Ms. Romig. *NT at 209-213.* The following conversation occurred between Sergeant Harris, using Ms. Romig's phone, and "Blue":

| Sergeant Harris: | Hey, are you around? Need to see you as soon as possible, Blue. |
| Appellant: | Yeah. |
| Appellant: | What haoeea bro? (Sergeant Harris testified that he believed Appellant misspelled the words "happening now"). |
| Sergeant Harris: | You didn't show and I went to bed. |
| Appellant: | Talk to me. |
| Appellant: | ??? |

6

| | |
|---|---|
| Appellant: | Wat U needed bri? (Sergeant Harris testified that he believed Appellant misspelled the word "bro"). |
| Sergeant Harris: | I need to see you for three whole ones (Sergeant Harris testified that he misspelled "whole" on purpose; Sergeant Harris testified that "three whole ones" meant three bundles of heroin). |
| Appellant: | I'm always around N, working. |
| Appellant: | ?? |
| Appellant: | Was going on? Bro. |
| Appellant: | Bro. |
| Appellant: | Okay. |
| Sergeant Harris: | How soon? I am sick and where? |
| Sergeant Harris: | I have a ride. Can I come to see you? |
| Appellant: | Yeah. |
| Appellant: | Call me now. |
| Appellant: | Cause I can come to you too, brother. |
| Appellant: | But my address is 12th and Pike Street. |
| Appellant: | Bro. |
| Sergeant Harris: | Give me a sec. |
| Appellant: | Yoo, so what you want me to do? |
| Appellant: | Okay. I'm in the car waiting on you, hon. |
| Appellant: | I come to you. |

*NT at 210 - 212.*

7

In the case at bar, the Appellant requested that this Court provide the jury with the instruction on entrapment. *NT at 364.* However, this Court declined to read the entrapment instruction as being inapplicable to this case. *NT at 376-377.* Appellant claims on appeal that entrapment was sufficiently raised based on the facts presented at trial. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* Appellant states that the Appellant was called to the scene by both a Commonwealth agent and the Commonwealth via text messages based on the false pretense that the Commonwealth agent was sick from heroin withdrawal. *Id.*

There was insufficient evidence presented at trial for a reasonable jury to find that the Appellant had established the elements of an entrapment defense. Pennsylvania law prohibits Sergeant Harris from "employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it." However, as set forth in the text messages between Sergeant Harris and the Appellant, the agreement to commit a drug delivery had already taken place prior to any mention of drug sickness. The Appellant had already asked what drugs were needed and a request was made for three bundles of heroin to which the Appellant replied "I am always around N, working." Any reference made to being "sick" was to establish the timing of the drug delivery and did not constitute persuasion or inducement to commit a crime. Sergeant Harris did no more than afford Appellant an opportunity to commit an illegal act and, therefore, this Court did not consider his actions to be sufficiently outrageous police conduct to support an entrapment defense. Additionally, the entrapment statute specifically excludes those individuals from protection who are ready to commit a crime. As reflected within the text messages between the Appellant and Sergeant Harris, the Appellant was an individual who was ready to commit the

8

crime of drug delivery. No persuasion or inducement was required. As a result, the Appellant was not entitled to a jury instruction on entrapment.

## Detective Leporace's Testimony

Appellant next claims that Detective Pasquale Leporace of the Berks County District Attorney's Office (hereinafter referred to as "Detective Leporace") should not have been permitted to testify at trial as an expert on the issue of possession with the intent to deliver. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* Appellant raises four reasons that Detective Leporace should not have been permitted to testify: 1) he was a fact witness, 2) expert testimony was not necessary, 3) his testimony was prejudicial and 4) no notice was given of his testimony. *Id.* In addition to addressing these issues on the record during trial, this Court will further discuss each one below. *NT at 95-101, 250-258.*

Appellant argues that Detective Leporace should not have been permitted to testify as an expert due to his role as a fact witness resulting from his participation in the arrest and search team and because he arrested Appellant's co-defendant, Michael Tiburcio. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* Appellant's position is without merit. The Pennsylvania Rules of Evidence "do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and an expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder." Commonwealth v. Huggins, 68 A.3d 962, 967 (Pa. Super. 2013). The Rules do not require that a witness be specifically designated as an expert or a lay witness. Id. "An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice." Commonwealth v. Watson, 945 A.2d 174, 176 (Pa. Super. 2008) (citation omitted). In the case at bar, Detective

9

Leporace would have been permitted to testify as both a fact witness and an expert. However, in response to Appellant's objection, the Commonwealth specifically stated that Detective Leporace was only being called to testify as an expert and not as a fact witness. *NT at 96-100, 254-255.* During trial, the prosecution limited Detective Leporace's testimony to his role as an expert in the area of drug trafficking and drug packaging. *NT at 316-352.* Therefore, although Detective Leporace could have testified as both a fact witness and expert, he only testified as an expert thereby eliminating any potential for jury confusion or prejudice to the Appellant.

Appellant claims that expert testimony was not necessary in this case as the Appellant was alleged to have made sales and brought heroin to provide to another individual. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* "[E]xpert opinion testimony is proper only where formation of an opinion on a subject requires knowledge, information, or skill beyond what is possessed by the ordinary juror." Commonwealth v. Carter, 589 A.2d 1133, 1134 (Pa. Super. 1991) (citation omitted). "[E]xpert testimony is admissible to prove whether the amount of drugs recovered in the defendant's possession was consistent with an intent to deliver or an intent to posses for personal use." Watson, 945 A.2d at 176 (citation omitted). "[E]xpert testimony is inadmissible if the jury can easily comprehend that the drugs recovered were possessed with the intent to deliver without the assistance of an expert." Watson, 945 A.2d at 176-177 (citation omitted). "Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." Id. at 176 (citation omitted).

At trial, Appellant relied upon Carter, *supra,* and Commonwealth v. Montavo, 653 A.2d 700 (Pa. Super. 1995), in support of his position that expert testimony was not necessary.

10

However, these cases are factually distinguishable from Appellant's case. Unlike the case at bar, the police officers in Carter observed the defendant engage in drug transactions and, therefore, the admission of their expert testimony to establish the defendant's intent to deliver and expert opinion that a drug transaction had taken place was prejudicial error. Carter, 589 A.2d at 1135. The Pennsylvania Superior Court found that the jurors did not require expert knowledge or insight to determine that the defendant was selling heroin. Id. In Montavo, the trooper opined that, based solely on his observations of the appellant and his co-defendant in areas known for drug trafficking, they were involved in drug dealing. Montavo, 653 A.2d at 705. The Pennsylvania Superior Court held that "special knowledge was not required to determine whether travelling to areas known for drug dealing was consistent with the activities of narcotics dealers" and, therefore, the trooper's testimony was prejudicial to the defendant. Montavo, 653 A.2d at 705-706.

In the case at bar, Detective Leporace testified that, in his opinion, Appellant possessed heroin with the intent to deliver. *NT at 320.* Detective John Lackner of the Berks County District Attorney's Office (hereinafter referred to as "Detective Lackner") recovered the following items from the Appellant: $818.00 in U.S. currency, two cellular telephones, and a sandwich bag containing a bundle of 10 heroin packets and another bundle of 9 heroin packets. *NT at 272, 315.* An additional 15 packets of heroin were located in a small change drawer in the Toyota Camry (hereinafter referred to as the "Camry") the Appellant arrived in. *NT at 280-281, 291-292, 315.* Appellant was charged with and convicted of Possession with the Intent to Deliver a Controlled Substance [heroin], Conspiracy to Commit Possession with the Intent to Deliver a Controlled Substance [heroin – with Michael M. Tiburcio] and three counts of Possession of a Controlled Substance [heroin]. *NT at 449; Verdict of the Jury, August 2, 2016.*

11

A jury would not have been able to easily comprehend that the drugs recovered from the Appellant were possessed with the intent to deliver without the assistance of an expert. The 19 packets of heroin found on the Appellant's person were insufficient to fill the text message order for heroin placed by Detective Harris to the Appellant for "three whole ones." The Appellant was 11 heroin packets short of completing the order and left 15 heroin packets behind in the Camry. In fact, the existence of the 15 packets of heroin in the Camry indicates that the Appellant was capable of fulfilling a request for "three whole ones" but declined to do so. Without the testimony of an expert, Appellant could have argued that the 19 packets found on the Appellant were strictly for personal use as evidenced by his inability to complete the drug transaction. Furthermore, the Appellant could have similarly argued that the 15 packets contained in the Camry were also for personal use since they were not located on the Appellant at the time of his arrest. An ordinary juror would not have had the knowledge of drug trafficking and drug packaging to differentiate between drugs possessed for personal use and those possessed for delivery. In support of his opinion that the drugs were possessed with the intent to deliver, Detective Leporace testified about the heroin market in Berks County including the street and bulk value of heroin as well the packaging and origin of the drugs in this case. *NT at 326-327.* Detective Leporace's testimony was necessary to establish that the drugs possessed by the Appellant were possessed with the intent to deliver. His testimony posed no risk of jury confusion or prejudice to the Appellant. Therefore, Detective Leporace's testimony was properly admitted at trial.

Appellant next claims that it was prejudicial to have Detective Leporace testify as an expert witness as the prejudice to the Appellant outweighed the Commonwealth's need for the evidence. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed*

12

*October 17, 2016.* This Court incorporates herein the above analysis regarding the necessity of Detective Leporace's testimony at trial. Detective Leporace's testimony and opinion were needed by the Commonwealth to establish that the Appellant possessed heroin with the intent to deliver and his testimony resulted in no prejudice to the Appellant.

Appellant next claims that Detective Leporace should not have been permitted to testify due to lack of notice, pretrial discovery or reports from Detective Leporace. In the case at bar, Detective Leporace prepared a police report regarding his participation on the arrest team when they apprehended the Appellant and Michael Tiburcio, but he did not prepare a report regarding his opinion on whether the Appellant's possession of heroin was consistent with an intent to deliver or an intent to posses for personal use. *NT at 336.*

The Commonwealth was not required to inform the Appellant prior to trial that it intended to call an expert witness. The mandatory disclosure requirements of Pa.R.Crim.P. 573 (B)(1) include exculpatory evidence, the substance of any inculpatory statements by the defendant, the defendant's prior criminal record, the circumstances surrounding any identification of the defendant, tangible evidence against the defendant, and the transcripts and recordings of any electronic surveillance. Pa.R.Crim.P. 573(B)(1)(a)-(g). In the event that the Appellant desired to know whether the Commonwealth intended to produce an expert witness at trial, the Appellant could have filed a motion for discretionary pretrial discovery pursuant to Pa.R.Crim.P. 573(B)(2).[7] However, Appellant failed to file a motion and, therefore, the Commonwealth had no obligation to disclose to the Appellant that an expert witness would be testifying at trial.

Appellant should have been aware and on notice that the Commonwealth would likely present an expert witness on whether the Appellant's heroin was possessed with the intent to

---

[7] On October 5, 2015, Appellant filed an Informal Request for Pretrial Discovery pursuant to Pa.R.Crim.P. 573(B)(1)(a-g) and 573(B)(2)(a)(i-iv) and (b). However, no motion was ever filed by the Appellant requesting the identity of the Commonwealth's expert witness.

13

deliver. The probable cause stated that when Appellant was taken into custody, he was in possession of 19 bags of heroin, $818.00 in U.S. currency, and two cellular phones. *Affidavit of Probable Cause, filed September 18, 2015*. Additionally, 15 bags of heroin were located in the vehicle in which Appellant was a passenger. *Id*. The criminal complaint clearly charges the Appellant with possession with intent to deliver heroin and criminal conspiracy to commit the same. *Police Criminal Complaint, filed September 18, 2015*. An ordinary juror would not have had the information or knowledge to know that the heroin possessed by the Appellant was possessed with the intent to deliver. Therefore, an expert witness was required to testify that the heroin was possessed with the intent to deliver and not for personal use. Appellant was on notice that an expert would be necessary and could have moved prior to trial to obtain an expert report pursuant to Pa.R.Crim.P. 573(B)(2)(b) but failed to do so.[8]

## Conspiracy with Michael Tiburcio – Sufficiency of the Evidence

When reviewing a challenge to the sufficiency of the evidence supporting a defendant's conviction, the court is required to evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." Commonwealth v. Rahman, 75 A.3d 497, 500 (Pa. Super. 2013) (citation omitted).

> The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could have determined that all of the elements of the crime have been established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a

---

[8] At trial, Appellant made an oral motion for an expert witness report. *NT at 251*. However, the deadline to file a discovery motion is 14 days after arraignment unless the time for filing is extended by the Court. Pa.R.Crim.P. 573(A). The original arraignment date was October 13, 2015. On November 10, 2015, Appellant filed a Motion to Compel Discovery and Extend the Pretrial Deadline which was denied on November 13, 2015.

14

reasonable doubt by means of wholly circumstantial evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Commonwealth v. Smith, 848 A.2d 973, 977 (Pa. Super. 2004) (citation omitted).

"[S]o long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." Rahman, 75 A.3d at 501.

The Appellant claims that the evidence presented at trial was insufficient to establish that he conspired to deliver heroin with Michael Tiburcio. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* As set forth within The Controlled Substance, Drug, Device and Cosmetic Act, Pennsylvania law specifically prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 P.S. §780-113(a)(30).

To establish the offense of possession of a controlled substance with intent to deliver, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it. The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case. Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the

15

form of the drug, and the behavior of the defendant. <u>Commonwealth v. Kirkland</u>, 831 A.2d 607, 611 (Pa. Super. 2003) (citations omitted).

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." <u>Commonwealth v. Devine</u>, 26 A.3d 1139, 1147 (Pa. Super. 2011) (citation omitted). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." <u>Commonwealth v. Feliciano</u>, 67 A.3d 19, 26 (Pa. Super. 2013) (citation omitted). "The conspiratorial agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." <u>Id</u>. (citation quotation marks omitted).

The Pennsylvania Crimes Code sets forth the definition of conspiracy as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. 18 Pa.C.S.A. §903(a)(1)(2).

As set forth above, between the dates of June 29, 2015, and August 11, 2015, Sergeant Harris conducted a drug investigation and directed Detective Camilla Karns, working in an undercover capacity, to purchase heroin from Ms. Romig on June 29, 2015, and July 20, 2015.

16

*NT at 204-205.* On August 11, 2016, Ms. Romig was arrested and gave permission to Sergeant Harris to user her phone to contact her supplier. *NT at 205-207.* Pursuant to this agreement, Sergeant Harris communicated with Ms. Romig's supplier, an individual known to Ms. Romig as "Blue" (subsequently determined to be the Appellant), via text message and posing as Ms. Romig. *NT at 209-213.* During the text conversation, Sergeant Harris asked "Blue" for "three whole ones" which meant he was asking for three bundles of heroin. *NT at 211.* Through the text conversation between Sergeant Harris (posing as Ms. Romig) and "Blue", they arranged to have "Blue" deliver the drugs to Ms. Romig. *NT at 212-213, 278.* Once "Blue" had arrived at the 1700 block of Haak Street at the address where Ms. Romig had been staying, "Blue" sent a text stating that he was outside. *NT at 213.* At that same time, the surveillance units working with Sergeant Harris informed him that a Camry had pulled up on the same street. *Id.* The Appellant exited the passenger side of the Camry and started to walk up onto the porch of Ms. Romig's Haak Street address. *NT at 214.* He was then taken into custody. *Id.* Detective Lackner recovered the following items from the Appellant: $818.00 in U.S. currency, two cellular telephones, and a sandwich bag containing a bundle of 10 heroin packets and another bundle of 9 heroin packets. *NT at 272, 315.*

Michael Tiburcio, Appellant's co-conspirator, was operating the Camry that transported Appellant to the 1700 block of Haak Street. *NT at 235, 279.* Michael Tiburcio was instructed by the police to exit the Camry and was searched by Detective Michael Rowe of the Berks County District Attorney's Office (hereinafter referred to as "Detective Rowe"). *NT at 280.* As a result of the search, Detective Rowe recovered the following items from Michael Tiburcio: a plastic sandwich bag containing 41 packets of crack cocaine, $296.00 in U.S. currency, a chunk of bulk cocaine and one packet of powder cocaine. *NT at 280-285, 288-291, 315.* Following the

17

administration of Miranda warnings, Michael Tiburcio directed the officers to a small change drawer to the left of the steering wheel in the Camry containing 15 packets of heroin. *NT at 280-281, 291-292, 315.* Detective Rowe also recovered Michael Tiburcio's cellular phone from inside of the Camry. *NT at 291.* Michael Tiburcio admitted to Detective George Taveras of the Berks County District Attorney's Office that he was "willing to cooperate with law enforcement," "he was doing this to get by," "times were tough," and that "this was a very small amount" and he can do "bigger things." *NT at 301-303.* At trial, the prosecution called Detective Leporace as an expert witness in drug trafficking and packaging to testify concerning the drugs recovered from the Appellant and Michael Tiburcio. *NT at 316-352.* Based on Detective Leporace's knowledge, training, experience and observations of the drugs possessed in this case, he rendered an opinion to a reasonable degree of professional certainty that the drugs possessed by the Appellant and Michael Tiburcio were possessed with the intent to deliver. *NT at 320-330.*

In the case at bar, based on the evidence presented at trial, a jury could have determined that all of the elements of possession of a controlled substance with intent to deliver as well as conspiracy to commit the same had been established beyond a reasonable doubt. Michael Tiburcio transported the Appellant to the scene of a drug transaction following text messages between Sergeant Harris and Appellant which included a request to purchase heroin. *NT at 211, 235, 279.* In addition to transporting the Appellant to deliver heroin to Ms. Romig, Michael Tiburcio operated the Camry which had an additional 15 packets of heroin stored in in a small change drawer by the steering wheel. *NT at 280-281, 291-292.* Michael Tiburcio was also transporting cocaine on his person in a variety of types that were ready for sale to clients who desired different forms of cocaine. *NT at 324.* In combination with the cell phones possessed by

18

both Michael Tiburcio and the Appellant and the significant amount of U.S. currency, the jury could have inferred that this was a joint enterprise and an agreement between the Appellant and Michael Tiburcio to engage in the sale of drugs on the streets of Reading, Pennsylvania.

## Evidence from Karla Romig – Sufficiency of the Evidence

Appellant claims that the evidence elicited from Commonwealth witness Karla Romig was insufficient to support the convictions. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* Specifically, the evidence was insufficient because 1) Ms. Romig was a regular and consistent user of heroin; 2) Ms. Romig was permitted to leave prison and attend a rehabilitation program at the Commonwealth's expense; and 3) Ms. Romig's testimony was not believable since she was testifying while charges were pending against her. *Id.* This Court notes that Appellant has not challenged the substance of Ms. Romig's testimony but has alleged that external factors influenced her testimony. "[W]hen challenging the sufficiency of the evidence on appeal, the Appellant's 1925 statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal." Commonwealth v. Gibbs, 981 A.2d 274, 281 (Pa. Super. 2009) (citation and quotation marks omitted). Failure to articulate these elements will result in a waiver of a challenge to the sufficiency of the evidence. Commonwealth v. Williams, 959 A.2d 1252, 1256-1257 (Pa. Super. 2008). Appellant has not specified any element or elements upon which the evidence was insufficient or set forth any of the convictions he is challenging. Instead, it appears that Appellant's claims, although claiming insufficient evidence, challenge the weight of the evidence. Accordingly, this Court will address Appellant's challenges to the weight of the evidence presented.

19

A challenge to the weight of the evidence "concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." Commonwealth v. Charlton, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted).

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. Commonwealth v. Champney, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

Additionally, a challenge to the weight of the evidence concerning credibility limit's the appellate court's review of the trial court's decision. Gibbs, 981 A.2d at 282.

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Id. (citation omitted).

In the case at bar, Detective Karns, acting in her undercover capacity, purchased heroin from Ms. Romig on June 29, 2015, and July 20, 2015. *NT at 109-144.* Ms. Romig testified that the Appellant was her drug supplier for both of these transactions. *NT at 164-172.* Appellant contends that Ms. Romig's heroin use, her admission into a treatment facility and her pending

20

charges renders her testimony insufficient to support a conviction. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* However, the jury, as the finder of fact, heard about Ms. Romig's heroin use, admission into a rehabilitation facility and her pending charges at trial. *NT at 161-202.* The jury was free to determine that Ms. Romig was not a credible witness. Based on the jury's verdict, the jury concluded that Ms. Romig was credible and, as a result, an appellate court may only reverse this Court's verdict if it is so contrary to the evidence as to shock one's sense of justice. The jury's verdict is not shocking to this Court's sense of justice. Additionally, these types of credibility claims are typically not cognizable on appellate review. Therefore, Appellant's claim must fail.

## Appellant's Sentence

Appellant's final claims are in regard to his sentence. Specifically, Appellant claims that there are no aggravating circumstances to justify an aggravated range sentence, his sentence is unduly harsh and manifestly excessive due to consecutive sentences on each charge and that a sentence to the statutory maximum is unjust and manifestly excessive. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.*

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines." Commonwealth v. Caldwell, 117 A.3d 763, 768 (Pa. Super. 2015) (alterations and citation omitted). "[A] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." Commonwealth v. Shugars, 895 A.2d 1270, 1275 (Pa. Super. 2006) (alteration and citation omitted). "In addition, the sentencing judge's statement

21

of reasons on the record must reflect this consideration, and the sentencing judge's decision regarding the aggravation of a sentence will not be disturbed absent a manifest abuse of discretion." Commonwealth v. Bowen, 975 A.2d 1120, 1122 (Pa. Super. 2009) (citation omitted).

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted).

A sentencing court has "discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." Commonwealth v. Pass, 914 A.2d 442, 446-447 (Pa. Super. 2006) (citation omitted). A sentencing court is not required to give a defendant a "volume discount" for his or her crimes by having all sentences run concurrently. Commonwealth v. Hoag, 665 A.2d 1212, 1214 (Pa. Super. 1995). "There is no absolute right to appeal when challenging the discretionary aspect of a sentence. Rather, an appeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." Commonwealth v. Dodge, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotation marks and citations omitted).

It is well-established that a sentencing court's failure to consider mitigating factors raises a substantial question. However, a sentencing court generally has discretion to impose

22

multiple sentences concurrently or consecutively, and a challenge to the exercise of that discretion does not ordinarily raise a substantial question. We are mindful, however, that the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case. An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.... [T]his Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question. Commonwealth v. Raven, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citations and quotation marks omitted).

"Where the sentencing court had the benefit of a presentence investigation report ("PSI"), [an appellate court] can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Commonwealth v. Griffin, 65 A.3d 932, 937 (Pa. Super. 2013) (citations and quotation marks omitted).

"The Eighth Amendment, which applies against the States by virtue of the Fourteenth Amendment, ... provides: Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Harmelin v. Michigan, 501 U.S. 957, 962 (1991) (quotation marks omitted). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences which are grossly disproportionate to the crime." Commonwealth v. Baker, 78 A.3d 1044, 1047 (Pa. 2013)

23

(citation omitted). The United States Supreme Court has set forth and Pennsylvania Courts have adopted a three-prong proportionality test to determine whether a sentence constitutes cruel and unusual punishment. Id. Specifically, a reviewing court will examine "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. (citation omitted). However, "a reviewing court is not obligated to reach the second and third prongs of the test unless a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. (citation and quotation marks omitted). Furthermore, successful Eighth Amendment challenges to non-capital sentences, both inside and outside the context of recidivist statutes, are extremely rare.[9] Id. at 1048-1049.

> [I]ntrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime. Commonwealth v. Zurburg, 937 A.2d 1131, 1137 (Pa. Super. 2007) (citation omitted).

Appellant claims that there were no aggravating circumstances to justify his sentences in the aggravated range. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* This Court reviewed the Appellant's PSI and was aware of the

---

[9] See Rummel v. Estelle, 445 U.S. 263 (1980) (no Eighth Amendment violation when defendant sentenced to life imprisonment with possibility of parole after 12 years based on defendant's receiving $120.75 by false pretenses which was the defendant's third non-violent felony conviction); Ewing v. California, 538 U.S. 11 (2003) (no Eighth Amendment violation when defendant sentenced to 25 years to life imprisonment for the theft of three golf clubs under California's three strikes law); Hutto v. Davis, 454 U.S. 370 (1982) (no Eighth Amendment violation when defendant sentenced to 40 years of imprisonment for possessing 9 ounces of marijuana with the intent to distribute) Harmelin v. Michigan, 501 U.S. 957, 962 (1991) ) (no Eighth Amendment violation when defendant sentenced to life imprisonment for possessing 650 grams of cocaine).

relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *Notes of Testimony, Sentencing Hearing, August 9, 2016 (hereinafter referred to as "NTS") at 10.* This Court considered the fact that the Appellant was arrested on this offense only thirty (30) days following his maximum date on state parole, had been involved in the criminal justice system since he was 16 years old, and was previously adjudicated delinquent on the charge of possession with intent to deliver. *NTS at 11.* This Court found that the Appellant is a danger to society due to his drug dealing on the streets of Berks County and perpetuating the heroin epidemic.[10] *Id.* The Appellant also has multiple current convictions and has a pattern of repeat criminal activity. *Id.* The Appellant was deemed to be a poor candidate for rehabilitation as he has been on both probation and parole but continues to reoffend. *Id. at 12.* This Court also found that there are multiple victims in this case due to the multiple packets of heroin that were to be delivered on the streets of Berks County. *Id.* Finally, a lesser sentence on the Appellant would depreciate the seriousness of the crime he committed. *Id.* Therefore, there were ample aggravating factors to support the imposition of a sentence on the Appellant in the aggravated range.

Appellant claims that he should not have been sentenced to consecutive sentences. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* Appellant states that the cumulative sentence was unduly harsh and manifestly excessive when running the charges consecutive and because the Appellant was not arrested after the first

---

[10] According to the National Institute on Drug Abuse, in 2011, "4.2 million Americans aged 12 or older (or 1.6 percent) had used heroin at least once in their lives." Furthermore, it is estimated that approximately 23% of individuals who use heroin become dependent on it. National Institute on Drug Abuse, *DrugFacts – Heroin*, at https://www.drugabuse.gov/publications/drugfacts/heroin (2014).
Since 2000, there has been a 200% increase in the rate of overdose deaths involving opioids (opioid pain relievers and heroin). Center for Disease Control and Prevention, *Increases in Drug and Opioid Overdose Deaths – United States, 2000-2014*, at http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6450a3.htm?s_cid=mm6450a3_w (2016). According to Berks County District Attorney John T. Adams, "Heroin abuse is rapidly becoming Berks County's number one drug problem." Reading Eagle, *Heroin Emerging as the top drug problem in Berks County*, at http://www.readingeagle.com/news/article/heroin-emerging-as-the-top-drug-problem-in-berks-county (2014).

drug delivery (Appellant alleges this would have helped Ms. Romig with her drug problem). *Id.* In order to raise a substantial question on appeal, Appellant must establish that this Court's decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case. As set forth above, the Appellant was convicted of various drug offenses involving the distribution of heroin in Berks County. Appellant engaged in multiple drug transactions with Ms. Romig. The Appellant was an active participant in the local drug trade. This Court exercised its discretion in sentencing the Appellant consecutively on the offenses. Furthermore, Appellant does not claim that this Court failed to consider mitigating factors in addition to his excessive sentence claim. In fact, this Court reviewed Appellant's PSI as part of the sentencing hearing. *NTS at 10.* Therefore, Appellant's argument is without merit.

Finally, Appellant claims that sentencing Appellant to the statutory maximum is both unjust and manifestly excessive and alleges that Appellant was punished for going to trial and that this Court has not imposed as harsh a sentence in other drug cases. *Concise Statement of Matters Complained of on Appeal Pa.R.A.P. 1925(B), filed October 17, 2016.* As set forth above, this Court considered the required sentencing factors and set forth on the record multiple reasons for the Appellant's sentence to the statutory maximum. The appellant must establish, by reference to the record, that this Court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. Appellant has no basis upon which to argue that he was punished for going to trial and the record does not support his assertion. Additionally, Appellant claims that this Court has not imposed similar sentences in other drug cases which, in this Court's opinion, raises an issue regarding a violation of his 8th Amendment rights. However, as set forth above, a threshold comparison of

the crime committed and the sentence imposed must lead to an inference of gross disproportionality before an intrajurisdictional and interjurisdictional analyses will take place. Zurburg, 937 A.2d at 1137. In the case at bar and for all the reasons contained herein, the Appellant's was sentenced in proportion to the crime he committed.

For the foregoing reasons, we respectfully request that the Appellant's Appeal be DENIED and his sentence AFFIRMED.

27