COMMONWEALTH of Pennsylvania, Appellee

v.

Harry C. ROSER, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 25, 2006.

Filed Dec. 13, 2006.

Daniel M. Pell, York, for appellant.

Joshua E. Neiderhiser, Asst. Dist. Atty., York, for the Com., appellee.

BEFORE: MUSMANNO, BENDER and TAMILIA, JJ.

OPINION BY BENDER, J.:

¶1 Harry C. Roser appeals from the February 22, 2006 judgment of sentence of two to five years' imprisonment imposed following conviction on his fourth offense of driving under the influence (DUI). We affirm.

¶2 At approximately 2:18 a.m. on May 22, 2005, Officer Patrick Hinds observed a pickup truck weaving and crossing over the fog line and double yellow traffic line several times. N.T. Trial, 1/9–11/06, at 39, 47. After observing the truck almost strike another vehicle, Officer Hinds pulled the truck over. *Id.* at 40. Officer Hinds exited his patrol car and approached the pickup truck. *Id.* at 41. As he was approaching, the truck backed-up a few feet as if it had been placed in reverse. *Id.* This concerned Officer Hinds, but the truck then stopped. *Id.*

¶3 Officer Hinds approached Appellant, who was in the driver's seat. *Id.* at 42. Appellant was able to present his driver's license upon request. *Id.* Officer Hinds detected an odor of alcohol and asked Appellant to step out of the vehicle. *Id.* at 43. Officer Hinds determined that the odor of alcohol was emanating from Appellant's breath. *Id.* Appellant was leaning against the truck and appeared to be having problems maintaining his balance. *Id.* at 44. He was barely able to stand up on his own. *Id.* at 48. When Officer Hinds asked Appellant to recite the alphabet, Appellant stood mute. *Id.* at 44. Appellant appeared to be confused, and Officer Hinds was unable to ascertain whether Appellant was comprehending the situation. *Id.* at 44, 48, 50. Appellant was unable to perform a preliminary breath test (PBT). *Id.* at 44, 48–49. Officer Hinds testified that Appellant's eyes appeared glassy and bloodshot. *Id.* at 45. Officer Jeffrey Oberdorf, who responded to the scene, corroborated Officer Hines's observations that Appellant appeared to be highly intoxicated and had an odor of alcohol. *Id.* at 63. Officer Oberdorf also stated that Appellant appeared to be "a little confused." *Id.* at 64.

¶4 At approximately 2:28 a.m., Officer Hinds placed Appellant under arrest for DUI and transported him to York Hospital to test his blood alcohol content (BAC). *Id.* at 45, 47. Prior to testing, Officer Hinds apprised Appellant of the warnings for refusal of testing contained in Penn-DOT form DL–26. *Id.* at 46. Appellant refused to submit to testing. *Id.* Although he was asked to sign the form, Appellant left a mark on it consisting of two wavy lines. *Id.* at 52. He was otherwise unresponsive. *Id.* at 53.

¶5 After being transported from the hospital to the police station, Appellant was released into the custody of his father at approximately 4:30 a.m. on the morning of May 22, 2005. *Id.* at 54–55. Appellant continued to appear intoxicated and confused, although less so, up until the time of his release. *Id.* at 56.

¶6 The Commonwealth filed an information on October 5, 2005, charging Appellant with one count of driving under the influence of alcohol under 75 Pa.C.S. § 3802(a)(1). This subsection prohibits driving "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1).

¶7 Appellant filed an omnibus pretrial motion on November 14, 2005, in which he sought, *inter alia*, postponement of trial in order to obtain an expert in toxicology to testify on behalf of his defense. As further described below, as a defense to section 3802(a)(1), Appellant testified at trial to establish that he was not under the

influence of alcohol when he was pulled-over but had, rather, ingested gasoline and bug and tar remover several hours before driving in an attempt to commit suicide. Thus, Appellant's counsel, Daniel M. Pell, Esq., sought to obtain a toxicologist to testify that ingestion of these other substances, although not constituting alcohol, may mimic the effects of alcohol. N.T. Trial at 71. Additionally, on November 18, 2005, Appellant filed an amended pretrial motion seeking suppression of evidence of his refusal to submit to chemical blood testing at York Hospital on the night of his arrest based on the insufficiency of the warnings contained in the December 2003 version of the PennDOT DL–26 form.

¶ 8 On December 12, 2005, the trial court held a hearing on Appellant's pretrial motions. Attorney Pell explained that his motion for postponement of trial was based on his "continuing difficulty to find a competent toxicologist to come in and testify at trial." N.T. Hearing, 12/12/05, at 2. Attorney Pell reiterated that the purpose of expert testimony from a toxicologist would be "to show that [Appellant] was not intoxicated under alcohol or a controlled substance at the time of his stop." *Id.* at 3. Again, Attorney Pell sought to establish, through expert testimony, that Appellant's ingestion of these other substances in an attempt to commit suicide would result in signs and symptoms mimicking alcohol intoxication. N.T. Trial at 71.

¶ 9 Nevertheless, trial commenced on January 9, 2006, with the defense still unable to obtain a toxicologist. The Commonwealth called Officer Hinds and Officer Oberdorf who testified to the above-noted facts surrounding the stop and arrest of Appellant. After the close of testimony on the first day of trial, Attorney Pell again raised the issue of his difficulty in obtaining a toxicologist. *Id.* Attorney

Pell again requested a continuance, which the court denied, indicating that Attorney Pell had had ample opportunity to obtain a toxicology expert, but still failed to do so. *Id.* at 73.

¶ 10 Appellant testified on the second day of trial. He stated that he was depressed on May 21, 2005, and, before noon on that day, drank some beer. *Id.* at 91, 97. He testified that, around noontime, he drank half a bottle of Turtle Wax Bug and Tar Remover and approximately 12 ounces of gasoline in an attempt to commit suicide. *Id.* at 91, 103. He passed-out and awoke a few hours later at some point between 4:00 p.m. and 5:00 p.m. *Id.* at 93. At that point, he consumed an additional 20 ounces of gasoline. *Id.* at 93, 104. He became unconscious again. *Id.* at 93. He awoke again at midnight, his mind racing uncontrollably. *Id.* at 94, 104. He stated that he "just had to get out of [his] home and [he] went out and ... got in [his] vehicle." *Id.* at 94. He remembers going in and out of consciousness and hearing sirens behind him. *Id.* He recalled stopping and getting out of his vehicle, but nothing more until he arrived at York Hospital. *Id.* at 95. He recalled indicating "no" when a nurse attempted to draw a blood sample. *Id.* Appellant admitted that he did not tell police or anyone at the hospital that he had ingested gasoline and bug and tar remover. *Id.* at 60, 105–106.

¶ 11 After the close of testimony on the second day of trial, the court convened a sidebar discussion with Attorney Pell and the Commonwealth. The Commonwealth conceded that if the jury believed that all Appellant drank before driving was gasoline and bug and tar remover, and if they believed that he had no alcohol in his system, he would be acquitted under section 3802(a)(1). *Id.* at 113. Accordingly, following further discussion, the court concluded that the gasoline and bug and tar

remover may be considered a "drug," and, therefore, the court allowed the Commonwealth to amend the information to include DUI charges under both section 3802(d)(2), which prohibits an individual from driving who is "under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle[,]" and section 3802(d)(3), which prohibits an individual from driving who is "under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." Appellant objected to the amendments, and in his closing argument, Attorney Pell argued, *inter alia,* that the Commonwealth failed to establish that gasoline or petroleum distillates, as contained in the bug and tar remover, constitute "drugs." N.T. Trial at 137.

¶ 12 Nevertheless, on January 11, 2006, the jury acquitted Appellant on the DUI charges at sections 3802(a)(1) and 3802(d)(2). However, the jury found Appellant guilty of violating section 3802(d)(3), which prohibits driving while under the combined influence of alcohol and a drug or drugs.

¶ 13 On February 22, 2006, the trial court sentenced Appellant to two to five years' imprisonment in a state correctional facility. Appellant filed a timely notice of appeal on March 16, 2006.

¶ 14 Appellant raises the following issues in the Statement of Questions Involved portion of his brief:

1. Whether the Trial Court erred in inviting the prosecutor to add two (2) new charges (75 Pa.C.S. § 3802(d)(2) and 3802(d)(3)) for submission to the jury after the close of all evidence and just moments prior to closing arguments, in addition to the original charge at 75 Pa.C.S. § 3802(a)(1) under which the prosecutor had proceeded and the defendant had defended up until that point in the trial?

2. Whether the Trial Court erred in instructing the jury that a "drug" for the purposes of a prosecution under 75 Pa.C.S. § 3802(d)(2) and 3802(d)(3) is any substance other than food which a defendant consumes and which the defendant intends will alter his mental state, rather than an instruction requiring that they find evidence based upon expert testimony that the substance, other than food, causes bodily function(s) to become altered?

3. Whether the Trial Court erred in refusing defendant a postponement of trial to obtain a toxicologist in order to testify about the effects of ingestion of gasoline and petroleum distillates upon the human body and the odors which would emanate from a person who had ingested these substances?

4. Whether the defendant must be resentenced as a first tier repeat offender under the case of *Commonwealth v. Jaggers,* [903 A.2d 33] (Pa.Super.2006), since his suppression motion was based upon the Commonwealth's use of PennDot Form DL–26?

5. Whether the Trial Court erred in sentencing defendant to two (2) to five (5) years in a State Penitentiary, and justifying that by a finding that the defendant has been engaged in "escalating" behavior and represents a danger to the public because of his ingestion of petroleum distillates and gasoline in a suicide attempt on the afternoon prior to his next-day driv-

ing, and whether the Court had any basis on the record to conclude that the defendant lied on the stand, and whether the Court was actually punishing the defendant for going to trial and not pleading guilty?

Appellant's brief at 7 (suggested answers omitted).

¶ 15 In his first issue, Appellant asserts that the trial court erred by allowing the Commonwealth to amend the information to add charges under sections 3802(d)(2) and 3802(d)(3) after Appellant testified in his defense and just prior to closing arguments. Appellant argues that the Commonwealth's motion to amend was untimely because it was on notice one month prior to trial that the defense sought to obtain a toxicologist and was, therefore, aware of the defense's intention to introduce evidence that Appellant ingested not alcohol, but substances that mimicked the effects of alcohol. Moreover, Appellant argues that, prior to jury selection, he informed the court and the Commonwealth that he would testify that he ingested these substances prior to driving and, therefore, the Commonwealth could have amended at that time. Appellant now argues that permitting the Commonwealth to amend the charges just before closing arguments deprived him of fair notice to prepare an adequate defense.

¶ 16 The trial court, on the other hand, concluded that the Commonwealth merely moved to "bring the charges into conformance with the evidence offered by the defendant[,]" and that this "could not have occurred until after the defendant testified to the use of petroleum distillates" because the Commonwealth had not introduced any evidence into its case in chief that Appellant ingested gasoline and bug and tar remover prior to driving. Trial Court Opinion (T.C.O.), 5/10/06, at 6. Similarly, the Commonwealth contends that it could

not have added the charges until after Appellant testified because it was his own direct testimony that formed the basis of the amendment and because adding the charges any earlier would have violated Appellant's Fifth Amendment right against self-incrimination. Commonwealth's brief at 11.

¶ 17 According to Pa.R.Crim.P. 564, the court may permit amendment of an information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. Moreover, "[u]pon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice." *Id.* "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa.Super.2006). "[O]ur courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules." *Commonwealth v. Grekis*, 411 Pa.Super. 513, 601 A.2d 1284, 1288 (1992).

¶ 18 As we stated in *Sinclair*, when presented with a question concerning the propriety of an amendment, we consider:

[w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the

amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Sinclair*, 897 A.2d at 1221 (quoting *Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa.Super.2001) (citation omitted)). Additionally,

[i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Id.* at 1222. In *Sinclair*, we concluded that the trial court properly permitted the Commonwealth to amend a criminal information to include DUI under section 3802(b), which involves driving with a BAC of 0.10% to 0.159%. The original information included charges under section 3802(a) (imbibing a "sufficient amount of alcohol such that the individual is rendered incapable of safely driving") and section 3802(c) (driving with a BAC of 0.16% or higher). In finding that sections 3802(a), (b), and (c) were cognate, the Court noted that,

following an amendment, relief is warranted only when the variance between the original and the new charges prejudices an appellant by, for example, rendering defenses which might have been raised against the original charges ineffective with respect to the substituted charges. Factors that we must consider in determining whether a defendant was prejudiced by an amendment include: (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Sinclair*, 897 A.2d at 1222 (citation omitted).

■ ¶ 19 In the instant case, the amendment did not change the factual scenario insofar as Appellant drove a vehicle while highly intoxicated. Appellant admitted as much in his own testimony when he stated that, prior to driving his truck, he was in and out of consciousness and that his mind was racing uncontrollably after imbibing gasoline and bug and tar remover. Additionally, we cannot conclude that the amendment added new facts previously unknown to Appellant, as it was his *own* inculpatory testimony which supported the amendment in the first place. Thus, the court did not err by accepting the Commonwealth's explanation that it could not have requested an amendment any earlier. Indeed, the Commonwealth had no evidence in its case-in-chief that Appellant was under the influence of a drug or drugs when he drove his vehicle. It was only after Appellant testified that the Commonwealth had a valid basis upon which to request an amendment to the information. The purpose of Rule 564, "to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed[,]" *Sinclair*, 897 A.2d

at 1221, has not been undermined in this case because it cannot be said that Appellant was uninformed of the criminal acts underlying the amendment. Thus, even though the elements of the offenses differ (*i.e.*, alcohol only versus drugs only or a combination of alcohol and drug(s)), Appellant was not prejudiced by the change, which was prompted by his own inculpatory testimony.

¶ 20 In sum, given these unusual circumstances, wherein Appellant provided inculpatory testimony against himself at his own trial, which in itself supported the amended charges under a different section of the same DUI statute, we cannot conclude that the Appellant suffered prejudice by taking this strategically risky move. Moreover, we note that, "[i]f there is no showing of prejudice, amendment of an information to add an additional charge is proper even on the day of trial" and "the mere possibility that amendment of an information may result in a more severe penalty due to the additional charge is not, of itself, prejudice." *Sinclair*, 897 A.2d at 1224. Accordingly, the fact that the amendment occurred at trial and *may* have resulted in a more severe penalty does not establish prejudice in this case.

¶ 21 Apparently, the defense strategy in this case was to establish that Appellant was intoxicated not from alcohol, as is required under section 3802(a)(1), but from ingestion of gasoline and bug and tar remover. It appears that the defense sought to obtain a toxicologist to testify that these substances mimic the effects of alcohol, but are not alcohol. However, the defense apparently did not contemplate the possibility that the court would find that these substances could be characterized as "drugs" under the DUI statute, thereby resulting in an amendment to the information and an instruction to the jury with regard to the definition of "drugs." This brings us to Appellant's second issue, *i.e.*, that the trial court erred by instructing the jury on the definition of "drugs."

¶ 22 First, we note our standard of review when examining a challenge to jury instructions:

When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Einhorn*, 2006 PA Super 322, ¶ 58, 911 A.2d 960 (2006) (citations and quotation marks omitted).

¶ 23 The trial court advised the jury that "drugs" are "any substance, other than food, that is intended to affect the function of the human body." N.T. Trial at 174. This definition is derived directly from 35 P.S. § 780–102. Appellant argues that the trial court erred by instructing the jury that it is the intention of the defendant that governs whether a substance is a drug. Appellant's brief at 20. Appellant contends that the "intention" referred to in this definition is not the intention of the defendant but, rather, refers to "causation." *Id.* In other words, Appellant argues that a "substance is a drug if it causes changes in the bodily function of a human being[,]" and that this is a question of law that "must be established by expert testimony where the drug is not a controlled substance, as here." *Id.*

¶ 24 We disagree. Appellant provided the evidence, through his own testimony, to establish that gasoline and bug and tar remover are drugs under the circum-

stances of this case. Appellant stated that he ingested these substances in an effort to commit suicide. He stated that, prior to drinking the bug and tar remover, he "turned the label around and . . . looked at the bottom and . . . saw it said [']Harmful, fatal if swallowed,[']" and he wanted to "do [his] best to make this fatal." N.T. Trial at 91. Moreover, he testified that, after he ingested gasoline and bug and tar remover, he experienced loss of consciousness and his mind was "racing uncontrollably." Given this evidence, the jury could properly infer that Appellant's consumption of the gasoline and bug and tar remover resulted in these symptoms or "changes in the bodily function" of Appellant. Accordingly, the trial court did not err in its instruction to the jury.

¶ 25 In his third issue, Appellant contends that the trial court abused its discretion by refusing a continuance to allow Appellant to procure a toxicologist that would testify on his behalf. A court may grant a continuance "in the interests of justice[.]" Pa.R.Crim.P. 106(a). The decision to grant or deny a continuance is within the sound discretion of the trial court. *Commonwealth v. Pries*, 861 A.2d 951, 953 (Pa.Super.2004). "The refusal to grant a continuance constitutes reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated." *Id.* (citation and quotation marks omitted).

¶ 26 Appellant has failed to establish that the court's refusal of his request for a continuance resulted in prejudice or constituted a manifest abuse of discretion. Appellant admits in his brief that he had "contacted many toxicologists but as of one (1) month prior to trial was not successful in obtaining one to testify." Appellant's brief at 22. This is consistent with the trial court's statement that counsel had been given ample opportunity to obtain a

toxicologist prior to trial but "had been unable to do so." T.C.O. at 5. The trial court explained that counsel had indicated that he had spoken to several different toxicologists all of whom were not available to testify on behalf of the defense. *Id.* The trial court's statements are supported by the record. Appellant fails to establish how he was prejudiced by the trial court's refusal when he admits that he made numerous efforts before trial to obtain a toxicologist, but was repeatedly unsuccessful in these attempts.

¶ 27 In his fourth issue, Appellant argues that the trial court erred by refusing to suppress evidence of his refusal to take a BAC test and that, pursuant to *Commonwealth v. Jaggers*, 903 A.2d 33 (Pa.Super.2006), he must therefore "be resentenced as a first tier offender, with substantially lower penalties under 75 Pa. C.S. § 3804(a) as opposed to being sentenced (as he was) under 75 Pa.C.S. § 3804(b)." Appellant's brief at 24. Appellant's argument proceeds on the flawed premise that he was convicted under section 3802(a)(1).

¶ 28 The defendants in *Jaggers* were multiple DUI offenders that had been charged under section 3802(a)(1) because they refused BAC testing. These defendants were also convicted under that subsection and were subjected to increased penalties for their refusal to submit to BAC testing. As noted in *Jaggers*, Pennsylvania's Implied Consent Law, at 75 Pa. C.S. § 1547, "in addition to requiring the arresting officer to advise the offender that his or her license will be suspended for failure to submit to testing, requires the officer to advise the offender that he will receive more severe penalties upon conviction if he refuses the test." *Jaggers*, 903 A.2d at 35. The DL–26 form used by officers to inform these defendants of the consequences of refusing a BAC test was

misleading in that it apprised them of potential consequences to a first-time offender, rather than the more severe penalties for refusal that would apply to a person with multiple DUI offenses. Nevertheless, the *Jaggers* court concluded that, even though the warnings were misleading, the defendants' refusals should not have been suppressed. Rather, the remedy in the *Jaggers* case was "to impose sentence as if the defendant had not refused chemical testing[,]" *i.e.*, sentence them as first-tier offenders. *Id.* at 38.

¶ 29 However, none of this is relevant in the instant case. The evidence of Appellant's refusal to take the BAC test had no impact on his sentence, as he was convicted only of violating section 3802(d)(3). The grading of this offense is governed by section 3803(b)(4), which states that "[a]n individual who violates section 3802(a)(1) where the individual refused testing of blood or breath, *or* who violates section 3802(c) or (d) and who has one or more prior offenses commits a misdemeanor of the first degree." 75 Pa.C.S. § 3803(b)(4) (emphasis added). Thus, Appellant's offense was graded under this section not because he was convicted of section 3802(a)(1) and refused testing, but because he was convicted under section 3802(d)(3) and was a multiple DUI offender.

■■■ ¶ 30 In his final issue, Appellant challenges the discretionary aspects of his sentence in arguing that his sentence is excessive. "An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence." Pa.R.A.P. 2119(f). "A failure to include the Rule 2119(f) statement does not auto-matically waive an appellant's argument; however, we are precluded from reaching the merits of the claim when the Commonwealth lodges an objection to the omission of the statement." *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa.Super.2006). Appellant has failed to include a Rule 2119(f) statement in his brief and the Commonwealth has objected to this omission. Accordingly, Appellant's final issue is waived.

¶ 31 For the foregoing reasons, we affirm the judgment of sentence.

¶ 32 Judgment of sentence affirmed.

¶ 33 Judge TAMILIA concurs in the result.