J-A04023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH HAYWOOD HARRIS, JR. | : | |
| | : | |
| Appellant | : | No. 851 MDA 2022 |

Appeal from the Judgment of Sentence Entered January 6, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004733-2019

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 15, 2023**

Appellant, Kenneth Haywood Harris, Jr., appeals from the January 6, 2022 judgment of sentence of 25 to 50 years of incarceration entered in the York County Court of Common Pleas following his conviction of Rape, Sexual Assault, and Attempted Rape.[1]  Appellant challenges the sufficiency and weight of the evidence, the legality of his mandatory minimum sentence, and the addition of the Attempted Rape charge during trial.  After careful review, we affirm Appellant's judgment of sentence.

The relevant facts and procedural history are as follows.  On June 11, 2019, York City Police Officers Adam Nothstein and David Baez responded to an assault in progress after a man reported that his neighbor ("Victim") was yelling out for help because she was being raped.  When Officer Nothstein

_____

[1] 18 Pa.C.S. §§ 3121(a)(1), 3124.1, 901(a), respectively.

arrived on the scene,[2] he heard Victim scream from inside an apartment and entered. Officers found Victim on her back lying on the floor with a man, later identified as Appellant, on top of her. Officers observed that Appellant was completely naked and Victim's pants were pulled down.

Victim immediately told officers that Appellant was trying to rape her. Appellant, however, claimed that the sexual encounter was consensual. Officer Nothstein also noted that Appellant's lip was bleeding; Appellant claimed Victim had punched him.

Victim promptly reported to York Hospital where medical staff performed a sexual assault forensic exam and collected evidence. Victim presented with, *inter alia*, injuries to her elbows, bruising, tenderness, abrasions, and lacerations to her vaginal area. An exam of the interior of her vagina revealed multiple injuries and blood at the bottom of her cervix where her cervix and vagina meet.

York City detectives interviewed Victim shortly after the assault. At that time, Victim told detectives that Appellant had pulled down her pants and underwear and forced his penis into her vagina multiple times.

Police arrested Appellant and, on July 11, 2019, charged him with Rape and Sexual Assault. Appellant's three-day jury trial commenced on May 19,

---

[2] Officer Nothstein wore a body camera. The jury viewed the body camera footage at trial.

2021.  Victim, Officer Nothstein, and Michelle Frey, the forensic nurse who examined Victim at York Hospital, testified at trial.[3, 4]

Relevant to the instant appeal, Victim testified that, on the night of the assault, Appellant "pulled down my pants and panties, and he - - and he put his penis inside me.  I told him to stop.  He didn't stop at all.  He said no." N.T. Trial, 5/20/21, at 114, 116.  She further testified that she "felt his penis inside me" and that she felt "pressure . . . in my [] vagina." *Id.* at 117-18. Victim repeatedly confirmed that Appellant's penis was inside her vagina and that she "kept saying no."  *Id.* at 114-118, 119, 144.

Appellant's counsel vigorously cross-examined Victim regarding the inconsistencies between her statement to Officer Nothstein immediately following the assault that Appellant had "tried" to rape her and "tried" to pull her pants down, and her subsequent statements and trial testimony that Appellant had, in fact, pulled down her pants and raped her.  *See id.* at 129, 133, 135-140.

Nurse Frey testified that Victim's initial chief complaint upon arriving at York Hospital was vaginal pain and bleeding.  *Id.* at 166-67, 179.  Nurse Frey also offered testimony about the nature and extent of Victim's physical injuries.  In particular, she testified that Victim exhibited bruising, tenderness,

---

[3] York City Police Detective Tiffany Pitts of the Special Victims Unit also testified.

[4] The Commonwealth did not present any DNA or other forensic evidence in support of its case.

pinpoint-like hemorrhages, and numerous lacerations to her vagina. *Id.* at 174-76. In addition to conducting her own examination of Victim, Nurse Frey also attended an examination of Victim performed by emergency room doctors. She further testified that during that examination doctors observed blood towards the back of Victim's cervix. *Id.* at 182-83. Nurse Frey explained that it was not possible that the blood was menstrual blood because Victim is postmenopausal. *Id.* at 190.

Appellant cross-examined Nurse Frey regarding Victim's statements to her about whether Appellant had vaginally penetrated Victim. Nurse Frey, reading her examination notes, stated "[i]t looks like she said that she thought so, but, like, she - -I put attempted, so she must not have been, like, a hundred percent [sure] but that she thought he did." *Id.* at 186.

Officer Nothstein testified that when he arrived on the scene he stopped outside of Victim's door and heard a female voice screaming that she was being raped and asking for help. *Id.* at 196. He explained that he then entered Victim's apartment and observed Appellant naked, laying on top of the Victim whose pants were pulled down below her buttocks. *Id.* at 196-97, 203. He described that Victim was "clenching the front of her pants pulling them up towards her waist . . . and the back part was exposed." *Id.* at 203. Officer Nothstein testified that, when describing the assault, Victim did not "use the word penetrate. She stated that his privates did touch her privates while he was attempting to have sex with her." *Id.* at 204. Later, on cross-examination, Officer Nothstein testified that in his written report he noted that

Victim reported that Appellant "did not go inside of her." *Id.* at 206. Officer Nothstein testified that Victim "seemed scared and frantic." *Id.* at 208. Officer Nothstein also testified that, when he was initially asking Victim what had transpired, he did not go into a lot of specific detail because his job as a patrol officer is to "secure and make everybody safe and just basically get a general overview of what happened without going into too much detail with the actual victim . . . so that there's no further trauma or any type of emotional setbacks or anything like that." *Id.* He explained that detectives follow up with victims in rape cases and conduct more in-depth interviews. *Id.*

At the conclusion of the evidence, but prior to closing arguments, the Commonwealth requested a jury instruction on the lesser-included offense of Attempted Rape. N.T. Trial, 5/21/21, at 225. Appellant objected to this late request on the grounds that the Commonwealth had known of the facts and circumstances of this assault as early as July 2019 when it charged Appellant and could have amended the information at any time prior to trial. *Id.* at 226. The Commonwealth responded that after jury selection but prior to opening statements it had informed Appellant's counsel of its intent to make this request. Appellant's counsel did not dispute that he had prior notice of the Commonwealth's intention. The trial court granted the Commonwealth's request, noting that the rules permit amendment of the information at any time up to and including during trial as long as the amendment does not create unfair surprise or prejudice. *Id.* at 227. The court concluded that the Commonwealth's request did not create any unfair surprise because Appellant

- 5 -

had known of the allegations and averments of fact since the Commonwealth filed the charges. *Id.* at 226.

On May 21, 2021, the jury convicted Appellant of the above charges. The trial court deferred sentencing pending the preparation of a pre-sentence investigation ("PSI") report. Relevant to the instant appeal, the PSI report indicated that Appellant has, *inter alia*, two prior Rape convictions.

On January 6, 2022, the trial court held a sentencing hearing and imposed a mandatory minimum sentence of 25 to 50 years' incarceration.[5] Appellant's counsel did not object to the accuracy of the PSI report or to the imposition of the mandatory minimum sentence.

Appellant filed a timely post-sentence motion in which he raised each of the issues presented in this appeal. The trial court denied the motion on May 17, 2022.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the verdict was against the greater weight of the evidence as to Rape and Sexual Assault[?]

2. Whether the evidence presented at trial was insufficient to support the jury's verdict as to Rape and Sexual Assault[?]

---

[5] The court imposed this sentence consecutive to a sentence of 7 to 14 years of incarceration Appellant was serving for failing to register as a sex offender.

3. Whether the trial court abused its discretion in imposing a mandatory minimum sentence pursuant to 18 Pa.C.S. § 9718[?]

4. Whether the trial court erred in granting the Commonwealth's request to add a lesser incident charge of Attempted Rape?

Appellant's Brief at 4.

## A.

In his first issue, Appellant challenges the weight the jury gave to the Commonwealth's evidence sustaining his Rape and Sexual Assault convictions. *Id.* at 10-12. In support, Appellant emphasizes the apparent inconsistencies between Victim's statements to Officer Nothstein and Nurse Frey that Appellant only tried to rape her and her subsequent statements and trial testimony that Appellant had penetrated her vagina. *Id.* at 11-12. He further argues that, given that Officer Nothstein found Victim "on her back with her pants pulled up in front, penetration would have been practically impossible." *Id.* at 12.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.

- 7 -

Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citation and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be

believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 n.3 (Pa. 2000).

Here, the jury credited Victim's unequivocal trial testimony that Appellant raped and sexually assaulted her over the statements she made to Officer Nothstein and Nurse Frey in the minutes and hours after the assault, when Victim was "scared and frantic." N.T. Trial, 5/20/21, at 208. The jury also credited Officer Nothstein's testimony that, as a first responder, his job was to secure Victim's safety and not to scrutinize or delve deeply into Victim's initial statement. ***Id.*** Last, in convicting Appellant of Rape and Sexual Assault, the jury credited Nurse Frey's testimony regarding the physical injuries sustained by Victim, including the presence of blood toward the back of her cervix. ***Id.*** at 174-76, 182-83, 190.

Appellant essentially asks this Court to reassess the credibility of the Commonwealth's witnesses, and reweigh the evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

**B.**

In his second issue, Appellant challenges the sufficiency of the Commonwealth's evidence in support of his Rape and Sexual Assault convictions. Appellant's Brief at 12-14. Relying primarily on inconsistencies in Victim's testimony and prior statements, Appellant asserts that the Commonwealth failed to establish beyond a reasonable doubt that Appellant penetrated Victim. *Id.* at 14. He also argues that the Commonwealth did not prove the charges because Victim's "cervix and vaginal area did not present any significant trauma or injury evidencing rape or sexual assault." *Id.* Last, Appellant claims that given Officer Nothstein's testimony, that he found Victim on her back with her pants pulled up to her waist in front, it would have been impossible for Appellant to have raped her. *Id.* He, thus, concludes that the evidence was insufficient to support the jury's verdict as to Rape and Sexual Assault. *Id.*

"A claim challenging the sufficiency of the evidence is a question of law." *Widmer*, 744 A.2d at 751. "Our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa. Super. 2019). When reviewing sufficiency challenges, we evaluate the record in the light most favorable to the verdict winner, giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014). This Court will not disturb a verdict when "there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt."

*Commonwealth v. Orr*, 38 A.3d 868, 872 (Pa. Super. 2011) (*en banc*) (citation omitted). The Commonwealth can establish these elements using solely circumstantial evidence. *Id.*

"[T]he fact[ ]finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Mobley*, 14 A.3d 887, 889-90 (Pa. Super. 2011) (citation omitted). In making our determination, we do not re-weigh the evidence and substitute our judgment for that of the factfinder. *Id.* at 890. Challenges to witness credibility pertain to the weight, not sufficiency, of the evidence. *Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014).

"[T]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient" to sustain a conviction. *Commonwealth v. Diaz*, 152 A.3d 1040, 1047 (Pa. Super. 2016) (citation omitted); 18 Pa.C.S. § 3106.

The jury convicted Appellant of Rape by Forcible Compulsion, which the Crimes Code defines as follows:

> **(a)** **Offense defined.--**A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:
>
> (1) By forcible compulsion.

18 Pa.C.S. § 3121(a)(1). Sexual intercourse is penetration by the penis, however slight. *Id.* at § 3101.

- 11 -

The jury also convicted Appellant of Sexual Assault. "[A] person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1.

Our review of the trial testimony indicates that the evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, and all reasonable inferences drawn therefrom, supports Appellant's conviction. As noted above, the uncorroborated testimony of a sexual assault victim, if believed by the jury, is sufficient to sustain a conviction. Here, Victim testified repeatedly that Appellant's penis was inside her vagina, noting that she "felt [Appellant's] penis inside" her and felt "pressure . . . in [her] vagina." N.T. Trial, 5/20/21, at 117-18. Appellant's sufficiency claim, therefore, fails on this basis alone.

In addition, Nurse Frey's testimony pertaining to the results of the examination she performed and the examination performed by emergency room doctors corroborate Victim's testimony that Appellant penetrated Victim during the commission of his crimes. In particular, Nurse Frey detailed the numerous bruises, lacerations, and abrasions present in Victim's vaginal area and testified that there was blood, which could not be menstrual blood, present in the area where Victim's vagina and cervix meet. *Id.* at 174-76, 182-83, 190. Given the physical evidence that indicated Victim sustained repeated blunt force trauma to the area in and around her vagina, we conclude that the Commonwealth presented sufficient evidence to prove that sexual

intercourse, without Victim's consent, occurred between Victim and Appellant. Appellant is, therefore, not entitled to relief on this claim.

## C.

In his third issue, Appellant avers that the trial court's imposition of a mandatory minimum sentence of 25 to 50 years' incarceration, imposed pursuant to the recidivist sentencing scheme in Section 9718.2,[6] is cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution and Article 1, Section 13 of Commonwealth of Pennsylvania Constitution. Appellant's Brief at 14-16. Appellant concedes that no court has ruled the mandatory provisions of Section 9718.2 unconstitutional but contends that his mandatory sentence is unconstitutionally cruel and unusual, since a standard range sentence for a rape conviction under the Sentencing Guidelines is 7 to 15 years' incarceration. *Id.* at 15-16.[7] *Id.*

---

[6] Section 9718.2(a)(1) provides, in relevant part: "Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary." 42 Pa.C.S. § 9718.2(a)(1).

[7] Appellant also asserts that because the jury did not make a finding that he had a prior conviction of a sexual offense, his mandatory sentence violates the principles established by *Alleyne v. United States*, 570 U.S. 99 (2013). However, the U.S. Supreme Court has clearly held that, "[o]**ther than the fact of a prior conviction**, any fact that increases the penalty for a crime

*(Footnote Continued Next Page)*

Appellant's challenge to the constitutionality of his sentence is a pure question of law. *Brown v. Levy*, 73 A.3d 514, 517 (Pa. 2013). Therefore, our scope of review is plenary and our standard of review is *de novo*. *Id.*

In addressing constitutional challenges, we are mindful that there is a strong presumption that legislative enactments are constitutional. *Commonwealth v. Barud*, 681 A.2d 162, 165 (Pa. 1996). For an act to be declared unconstitutional, an appellant must prove that the act "clearly, palpably and plainly" violates the constitution. *Id.* (citation omitted). "All doubts are to be resolved in favor of sustaining a statute; thus an appellant has the heavy burden of persuasion when challenging the constitutionality of a statute." *Commonwealth v. Nguyen*, 834 A.2d 1205, 1208 (Pa. Super. 2003).

Moreover, "Pennsylvania courts have repeatedly and unanimously held that the Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendments to the United States Constitution, and that the Pennsylvania Constitution affords no broader protection against excessive sentences than that provided by the Eighth Amendment to the United States Constitution." *Commonwealth v. Elia*, 83 A.3d 254, 267 (Pa. Super. 2013) (citation and internal quotation marks omitted). Appellant has not argued to the contrary. Accordingly, we only

---

beyond the prescribed statutory minimum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added). Appellant's claim, thus, fails.

need to review Appellant's claim under the Eighth Amendment. ***Commonwealth v. Barnett***, 50 A.3d 176, 197 (Pa. Super. 2012).

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. "The Cruel and Unusual Punishment clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." ***Elia***, 83 A.3d at 268 (citation and internal quotation marks omitted). However, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences which are grossly disproportionate to the crime." ***Commonwealth v. Baker***, 78 A.3d 1044, 1047 (Pa. 2013) (citation omitted).

In order to determine if a sentence violates the Eighth Amendment, this Court applies a three-pronged test, including:

> (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

***Id.*** (citation omitted). Importantly, we are not obligated to reach the second and third prongs of the test "unless a threshold comparison of the crime committed and the sentence imposed leads to an [inference] of gross disproportionality." ***Commonwealth v. Succi***, 173 A.3d 269, 285 (Pa. Super. 2017) (citation omitted).

Here, the court sentenced Appellant, a repeat felony offender, under the recidivist sentencing scheme. Challenges to recidivist sentencing schemes are rarely successful. *Baker*, 78 A.3d at 1048.[8]

In *Baker*, our Supreme Court upheld the imposition of a mandatory minimum sentence of 25 to 50 years' incarceration for a defendant who had been convicted of possessing child pornography more than one time. 78 A.3d 1052. Baker argued that his sentence was a simple, non-serious, possessory offense. Our Supreme Court disagreed and emphasized "the fact that [the appellant] is a repeat offender certainly goes to the gravity of his instant offense." *Id.* at 1051. The Court also explained that the appellant's sexually based crimes could not be viewed "in a manner that detaches them from the devastating victimization" and "sexual abuse and exploitation of innocent children for personal gratification." *Id.* at 1052. The Court concluded that Baker's sentence, which was 500% above the statutory maximum sentence which could be imposed on a first offender, was not an unconstitutionally disproportionate sentence. *See id.* at 1050, 1052.

---

[8] In *Baker*, our Supreme Court observed that the United States Supreme Court has only once struck down as unconstitutional the application of a recidivist sentencing statute after a South Dakota court imposed a sentence of life imprisonment without the possibility of parole based on the appellant's conviction of passing a bad check in the amount of $100. 78 A.3d at 1048. *See*, *e.g.*, *Rummel v. Estelle*, 445 U.S. 263 (1980) (finding no violation of the Eighth Amendment where a Texas court imposed a sentence of life with the possibility of parole after 12 years' incarceration for receiving $120 under false pretenses); *Ewing v. California*, 538 U.S. 11, 17-20, 30-31 (2003) (upholding the constitutionality of a sentence of 25 years' to life imposed pursuant to California's three-strikes law upon a conviction of theft involving three golf clubs).

As noted above, Appellant concedes that no court has ruled the mandatory provisions of Section 9718.2 unconstitutional. Moreover, Appellant has not addressed the proportionality considerations outlined in *Baker*. Nevertheless, we observe that Appellant has two prior convictions of Sexual Assault—one in 1985 and one in 1991, and both in New Jersey. Appellant's instant crimes—Rape, Sexual Assault, and Attempted Rape—are serious offenses on their own and made even more grave by Appellant's repeat offender status. After comparing the gravity of the offenses with the severity of Appellant's sentence, we do not find that the mandatory sentence is grossly disproportionate to the offenses.[9] We, therefore, conclude that his sentence is not cruel and unusual.

**D.**

In his final issue, Appellant claims that the trial court erred in permitting the Commonwealth to add a lesser-included charge of Attempted Rape near the end of trial. Appellant's Brief at 16-18. Appellant asserts that this late addition prejudiced him because his defense at trial had been that he had not raped or sexually assaulted Victim, but only that he had attempted to do so. *Id.* at 17-18. He, thus, avers that the amendment rendered his defense to

_____

[9] Appellant's sentence imposed as a recidivist exceeds the statutory maximum applicable to a first offender by 250%. In comparison, the *Baker* Court found the appellant's sentence, which exceeded the otherwise statutory maximum penalty by 500%, was not disproportionate and was, therefore, constitutionally sound. *See Baker*, 78 A.3d at 1050.

- 17 -

the previously charged offenses of Rape and Sexual Assault ineffective as to the new charge. *Id.* at 18.

We review a trial court's decision to grant or deny a motion to amend an information for an abuse of discretion. *See Commonwealth v. Small*, 741 A.2d 666, 681 (Pa. 1999). As we have explained,

> [a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 10 (Pa. Super. 2014) (citations and quotation marks omitted).

Rule 564 of the Pennsylvania Rules of Criminal Procedure provides as follows:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564

"[I]f there is no showing of prejudice, amendment of an information to add an additional charge is proper even on the day of trial." *Commonwealth v. Roser*, 914 A.2d 447, 455 (Pa. Super. 2006) (citation omitted) (allowing amendment just prior to closing arguments). "[O]ur courts apply the rule with

- 18 -

an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of procedural rules." ***Commonwealth v. Grekis***, 601 A.2d 1284, 1288 (Pa. Super. 1992). ***See also Commonwealth v. Mentzer***, 18 A.3d 1200, 1202 (Pa. Super. 2011) (same).

Relief is necessary only when the amendment prejudices the defendant. ***Roser***, 914 A.2d at 454. To evaluate prejudice, courts consider whether the amendment changes the factual scenario; whether new facts, previously unknown to the appellant, were added; whether the description of the charges changed; whether the amendment necessitated a change in defense strategy; and whether the timing of the request for the amendment allowed for ample notice and preparation by appellant. ***Id.***

Here, the trial court explained its decision to permit the Commonwealth to add the lesser-included offense of Attempted Rape as follows:

> [A]fter the testimony was presented at trial (but prior to closing arguments) the Commonwealth sought to add the charge of Attempted Rape. The new charge arose out of the same factual situation as the initial Rape charge, involved the same basic elements, and is a lesser included offense of the crime originally charged in the information.

Trial Ct. Op., 5/20/22, at 13. With respect to Appellant assertions that the addition of the Attempted Rape charge prejudiced him because of the impact it had on his trial strategy, the court opined that,

> [T]he Commonwealth asserted that it had informed [Appellant's c]ounsel after jury selection and prior to opening statements that it might be requesting to add that charge, and [Appellant's c]ounsel did not dispute this assertion. Moreover, because

[Appellant] was convicted of Rape (in addition to the Attempted Rape and Sexual Assault charges), there is no prejudice to [Appellant].

*Id.*

Following our review of the record, we conclude that the trial court did not abuse its discretion in granting the Commonwealth's request to add the lesser-included Attempted Rape charge. This charge arose out of the same circumstances, and has the same factual basis, as the Rape and Sexual Assault charges. Moreover, Appellant had notice prior to the commencement of trial that the Commonwealth would likely argue for the inclusion of the lesser-included offense of Attempted Rape. Last, as the jury convicted Appellant of all three offenses, including the more serious offense of Rape, Appellant has not demonstrated that the addition of the Attempted Rape charge, which merged with the Rape conviction, prejudiced him. This claim, thus, fails.

**E.**

In sum, each of Appellant's challenges lacks merit. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2023